No. 22,618.

JAMES W. PEARSON, SUSAN LUE, and CELIA B. PATTON, *Appellants*, v. RAYMOND ORCUTT, REBECCA A. ORCUTT, and SARAH PRUITT, *Appellees.*

SYLLABUS BY THE COURT.

WILL—*Interpretation—Life Estate to Widow with Qualified Power of Disposition.* A testator whose property consisted of a farm and the personal property upon it died leaving a will containing substantially these provisions:

I devise and bequeath to my wife all the property which I may own at the time of my death. "And I especially direct that immediately upon the probate of this will that my said wife shall enter upon the possession and ownership of each, every and all of the above devised property, with power to sell and dispose of the same in any way that she may desire without the intervention of any court during her natural life. But I further direct that in case she shall not have sold or disposed of all my said property prior to her death, or if she shall not survive me, then out of such of my estate as shall remain, the sum of $50 shall be paid to my beloved grandson, Raymond Orcutt, and that the remainder thereof, shall be divided among my five children, if living."

The wife died seven years later at the age of 84, and two months before her death executed a deed to the farm to her grandson, Raymond Orcutt, as a gift, no consideration passing.

*Held,* that the will gave to the widow a life estate coupled with a

Pearson v. Orcutt.

qualified power of disposition of the fee, and that the power did not extend to the making of such conveyance.

Appeal from Shawnee district court, division No. 1; ROBERT D. GARVER, judge. Opinion filed April 10, 1920. Reversed.

Z. T. Hazen, Otis E. Hungate, and Paul H. Heinz, all of Topeka, for the appellants.

J. J. Schenck, and Tinkham Veale, both of Topeka, for the appellees.

The opinion of the court was delivered by

MASON, J.: John W. Pearson, who died in 1911, left a will which was duly probated and the provisions of which his widow accepted, giving to her at least a life interest in all his property (consisting of an eighty-acre farm and the personal property thereon) coupled with a power of disposition, the extent of which is the question in controversy. On August 13, 1918, about two months before her death, at the age of 84 years, she executed to Raymond Orcutt, a grandson, a deed to the farm, then worth nine or ten thousand dollars. Three children of John W. and Nancy M. Pearson brought the present action against Raymond Orcutt (joining as defendants the two other children, one of them being Orcutt's mother) asking that the deed be held ineffective and that each of the plaintiffs be decreed to be the owner of a one-fifth interest in the land. They were denied relief, and now appeal.

The plaintiffs asked that the deed be set aside because of want of capacity, fraud, and undue influence. The decision of the trial court, however, must be regarded as finally disposing of that issue. The case turns upon the interpretation of the will with respect to the character of the interest and power of disposition it vested in the widow. The defendants assert that she acquired an absolute fee, or if not, then a life estate coupled with an unlimited power of disposition. The plaintiffs say that she took only a life estate with a power of disposition so limited as not to authorize the conveyance made to her grandson. The will, omitting the formal parts, reads:

"Reposing full faith and confidence in my beloved wife, Nancy M. Pearson, I do hereby devise and bequeath unto her all property, real,

personal and mixed, which I may own at the time of my death, provided my beloved wife shall survive me; and I hereby direct that no executor shall be appointed of my said estate and that no administration thereof shall be had. And I especially direct that immediately upon the probate of this will that my said wife shall enter upon the possession and ownership of each, every and all of the above devised property, with power to sell and dispose of the same in any way that she may desire without the intervention of any court during her natural life. But I further direct that in case that she shall not have sold or disposed of all of my said property prior to her death, or if she shall not survive me, then out of such of my estate as shall remain, the sum of $50 shall be paid to my beloved grandson, Raymond Orcutt, and that the remainder thereof shall be divided among my five children, if living, namely: Sarah J. Pruitt, wife of William Pruitt; Rebecca Orcutt, wife of Jacob Orcutt; Celia R. Combs, wife of Isaac Combs; James W. Pearson and Susan O. Lue, wife of Frank Lue, share and share alike, if all of said children be living; but if any of said children shall be dead, then that the heirs of the body of such deceased child, or children, shall have the share of such deceased parent."

The defendants place much reliance upon *McNutt v. McComb*, 61 Kan. 25, 58 Pac. 965. There a fee simple was held to vest in the widow under a will reading as follows:

"Item first: I hereby devise and bequeath unto my beloved wife, Lucinda Burke, subject to the payment of my debts, funeral expenses, and other expenses, all my estate, real and personal and mixed.

"Item second: At the death of my said wife, I direct that whatever may then remain of my said estate be divided between my three children, Margaret J. McNutt, Alonzo Burke, and Sophia Whitmore, and my grandson James Whitmore, as follows: One-third to Margaret J. McNutt, one third to Alonzo Burke, and the other third to be equally divided between Sophia Whitmore and James Whitmore above mentioned.

"I hereby direct that no inventory or appraisement of my property, real or personal, be required, and that no bond shall be required of my executrix.

"I hereby constitute and appoint my wife, Lucinda Burke, executrix of this my last will, and authorize and empower her to sell in such manner and upon such terms as she deem proper, at public or private sale, any or all of my personal property, and also in like manner to sell as much of my real estate as may be necessary for the payment of my debts, and convey the same in fee simple, without an order of court, as fully as I in my lifetime could do."

The similarity of that will to the one here involved, with respect to the estate conveyed, is obvious. But several considerations serve to impair the force of the decision as a controlling precedent here. It was influenced largely by the application of

the ancient and artificial rule that where the language of a will on its face imports the vesting of an absolute fee, that effect shall not be denied by reason of a subsequent clause attempting a limitation thereon. This rule is one of a number of somewhat similar character made use of in solving problems arising from conflicting provisions by giving preference to one or the other according to some hard and fast formula, instead of attempting to reconcile them—to ascertain and carry out the actual wishes of the testator as derivable from his language and the attending circumstances. The primary rule of construction now followed by this court, in that situation as in all others, is to give effect to the testator's real intention as gathered from the entire document, without regard to the place in which it occurs, except so far as that circumstance may logically throw light on his meaning. (*Markham v. Waterman,* 105 Kan. 93, 181 Pac. 621.) Moreover, in the McNutt-McComb case great weight was attached to the fact that the devise and the attempted limitation thereon were stated in separate items, expressly designated as such. Here they are contained within the same paragraph. There are also details peculiar to the will here involved which have some bearing on the matter, to which later reference will be made.

The words "I do hereby devise and bequeath unto her all property, real, personal and mixed, which I may own at the time of my death" were of course sufficient in themselves to pass an absolute fee. The rule of the common law that only a life estate would be created by a general devise unless reference were made to the heirs of the devisee (40 Cyc. 1525, 1526) or a purpose to pass a fee were otherwise affirmatively shown (2 Underhill on the Law of Wills, § 684) is abrogated by the statute to the effect that a devise shall be construed to convey all the testator's estate unless an intention to the contrary shall clearly appear (Gen. Stat. 1915, § 11810), which corresponds to the similar provision dispensing with the mention of the heirs of the grantee in a deed. (Gen. Stat. 1915, § 2049.) If, however, the testator actually intended a devise in fee simple there could have been no occasion for the subsequent direction that his widow should immediately enter upon the possession and ownership of the property, with power to sell and dispose of it during her life. This provision following so closely upon the

devising clause was plainly intended to be construed in connection with it and is quite persuasive that the actual purpose in his mind was that she should take only a life estate, coupled, however, with a power (either limited or absolute) to dispose of the fee. This view is strengthened by the use of the words "during her life," which may reasonably be interpreted as qualifying the ownership referred to in the same sentence, and at all events by the clearest implication amounts to a negation of a right in the widow to dispose of the property by will, since that would be the only disposition which might naturally be spoken of as taking place after her death. That the testator intended her estate to terminate with her life is further confirmed by the provision that any of the property not sold or disposed of in her lifetime should upon her death go, not to the persons who would necessarily constitute her heirs, or whom she might designate by will, but (subject to the one specific bequest to the grandson) to his three surviving children. "A gift over of what remains frequently indicates that the particular estate was only a life estate with remainder over." (40 Cyc. 1587.) We regard these considerations as requiring the conclusion that the testator intended his wife to take only a life estate, with a power of disposition the extent of which is to be determined very much as though the title granted had been expressly so limited.

By the weight of authority even the addition of an unlimited power of disposition will not convert a life estate into a fee. (2 Alexander on Wills, § 972; Notes, 6 L. R. A., n. s., 1186; 39 L. R. A., n. s., 805. See, also, note, 1 L. R. A., n. s., 782.)

The language employed—"with full power to sell and dispose of the same in any way that she may desire"—is very broad and if a literal construction is adopted goes far to indicate an absolute power of disposition. It is true, however, as suggested by the plaintiffs, that taken literally the phrase "sell and dispose" is narrower than "sell or dispose," and might be given the force of such an expression as "sell and deliver." The apparent sweeping effect of the provision may perhaps be accounted for as the testator's expression of the thought that was obviously present in his mind, that in no event whatever was the intervention of a court to be necessary to her conveying the property. The fact that he withheld

from her the power to dispose of the property by will shows that it was not his wish that the fee should be absolutely within her control, and justifies a restrictive reading of the words "sell and dispose" so far as the language and context leave room for such an interpretation. His primary purpose was clearly to make provision for her maintenance, in the broadest sense of that term—for the use and disposition of the property for her interest and according to her judgment. She was at liberty to use it or its proceeds to meet the expenses of such manner of living as she might see fit to adopt, but this would not imply that she might give it away. (*Blair v. Blair,* 82 Kan. 464, 108 Pac. 827; *Griffin v. Kitchen,* 225 Mass. 331; *Bevans v. Murray,* 251 Ill. 603.) Doubtless she might have sold it in order to make an investment or embark in some other business than farming—matters said in the Kansas case just cited to be beyond the scope of mere maintenance. But if the testator's purpose had been to empower her to dispose of it to the impoverishment of the estate and without benefit to herself— to give it away outright—an express reference to a power so out of harmony with his general plan, as exhibited by the will as a whole, might naturally have been expected. It is quite needless to speculate upon just what action on the part of the widow with respect to the property would have been permissible. If her husband intended any restraint at all upon her action in that regard—and we are constrained to believe that he did—he plainly did not wish to leave her at liberty to turn the farm over to their grandson to the exclusion of all their children. Such a course was not only violative of the spirit of the will, but as we think of its wording, as interpreted through the consideration of all its provisions in an effort to arrive at the meaning it was formulated to express. That the children of the testator and his wife should share the property between them on her death, so far as it had not been used up either in providing for her maintenance or in following plans devised by her consistent with the reasonable conservation of the estate—at all events not destructive of it—was an intention as readily to be gathered from reading the will as though it had been expressly stated. It would surely have been a matter of surprise to the father of the five children if it had been suggested to him that the language he had chosen

permitted them to be deprived of all benefit of the will by a gratuitous conveyance to his grandson made by his wife just before her death.

Many cases are cited in the briefs having more or less bearing upon the question discussed. It does not seem advisable, however, to undertake to review them, for each case must to a large extent be determined upon the exact language involved and so offers but little help in the decision of others. As was said by Chief Justice Marshall, in words that have been often quoted:

"The construction put upon words in one will, has been supposed to furnish a rule for construing the same words in other wills; and thereby to furnish some settled and fixed rules of construction which ought to be respected. We cannot say that this principle ought to be totally disregarded; but it should never be carried so far as to defeat the plain intent; if that intent may be carried into execution without violating the rules of law. It has been said truly, 3 Wils. 141, 'that cases on wills may guide us to general rules of construction; but, unless a case cited be in every respect directly in point, and agree in every circumstance, it will have little or no weight with the court, who always look upon the intention of the testator as the polar star to direct them in the construction of wills.'" (*Smith v. Bell*, 31 U. S. 68, 80.)

The judgment is reversed, and the cause is remanded with directions to render judgment in accordance herewith.