No. 29,929.

Attree Smith, Executor of the Last Will and Testament of Nellie M. Robinson, Deceased, *Appellee*, v. Harry E. Judge and Myra Harvey, *Appellants* (et al., *Defendants*).

(298 Pac. 651.)

Opinion filed May 9, 1931.

*R. L. Hamilton,* of Beloit, for the appellants.

*Z. C. Millikin,* of Salina, and *William N. Tice,* of Beloit, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This appeal involves the interpretation and construction of two wills, particularly with reference to the authorized method of disposing of property as gifts for charitable and religious purposes, whether by conveyance or transfer *inter vivos,* or by will of the donee.

The action was commenced by the executor of the estate of the donee under the first will asking for an interpretation and instructions as to distribution of the property involved, making legatees and devisees under both wills parties defendant. The trial court held the first will authorized the donee therein to dispose of personal property as gifts for charitable or religious purposes by will, but did not authorize such disposition of real property where the title still stood in the name of the original testator. The defendants entitled to the remainder under the first will appeal.

The following is the pertinent part of the first will which was executed by Greenleaf B. Sutton:

"I give, devise and bequeath to my beloved sister, Nellie M. Robinson, all of the property, real, personal and mixed, of which I die possessed or to which I shall be entitled at the time of my death, to have and to hold the same with all the rents and profits hereon during her lifetime; hereby giving to my said sister, Nellie M. Robinson, full power and authority to sell and dispose of any and all of such property at public or private sale and upon terms and conditions which may be deemed suitable to her and to use the proceeds thereof for her support and convenience or for reinvestment or for gifts to charitable or religious purposes; giving to my said sister full power and authority to make deeds and conveyances of any and all of my real estate as full as I might myself, if I were alive.

"After the death of my said sister or upon my death, should I survive her, then I give, devise and bequeath all of my said property or the proceeds of the reinvestment of the same to my beloved nephew and niece, Harry E. Judge and Myra Harvey, and in such shares as shall be designated in writing by my said sister, Nellie M. Robinson. If I should survive my said sister or should she survive me and fail to designate the proportion which my said nephew and niece shall take in my said estate, then I direct that my said nephew and niece shall take of my said estate share and share alike."

At the time of the death of Mr. Sutton he was in partnership with his sister's husband, owning a half interest in a large cattle ranch later sold for $40,000; also a half interest in the city residence

property where he and his sister and her husband resided. After fully settling the estate of Mr. Sutton, as executor, Mr. Robinson died intestate, his wife being his sole and only heir. And in 1928 Mrs. Robinson died, leaving a will by which she gave for charitable and religious purposes, to organizations of that character, gifts amounting to $7,500, and also a gift of corporate stock valued at $1,000, and bequeathed to the local Methodist church the residence property valued at $2,500 in which the title to an undivided half interest still stands of record in the name of Sutton.

The trial court found there was in the possession of Mrs. Robinson at the time of her death property directly traceable to the Sutton estate, and reinvested in notes and mortgages, amounting to $15,300 besides the half interest in the residence property.

It was the evident intention of Mrs. Robinson in making her will to regard the property she had received from her brother as her own and except for the bequests to her niece and nephew, appellants herein, she apparently undertook to dispose of the property received from her brother's estate just as she did with her own property. To the niece and nephew named in the Sutton will she gave $10,000 and $3,000 respectively, and also made them and four other relatives residuary legatees. The bequests contained in her will amounted to considerably more than her own property separate and apart from that traceable to the Sutton estate.

There is no appeal from the holding of the trial court as to the real property.

It is not contended that Mrs. Robinson could not, under the provisions of the Sutton will, have used the proceeds of the estate during her lifetime for her support and convenience, even to the extent of completely exhausting them, nor is it contended that she could not have used the entire proceeds of the estate during her lifetime for gifts to charitable or religious purposes.

The sole contention of the appellants in this connection is that Mrs. Robinson was not authorized by the Sutton will to make gifts of his property to charitable or religious purposes by her will. The authority to use the proceeds for such purposes was not limited nor wanting, but the mode of execution may have been limited.

It was held in the case of *Sinke v. Muncie*, 110 Kan. 345, 203 Pac. 1102, that where the power to dispose of the estate is not limited either by implication or express terms it may be executed either by deed or by will. It is stated in 49 C. J. 1285:

"Where no mode is prescribed, or where the manner of execution is left to the discretion of the donee, he may execute it in any manner which will legally effectuate the intention of the donor."

Is the mode of executing the power conferred in the Sutton will limited by either express or implied terms?

It is urged by appellee that the word "dispose" means to do so by will as well as by deed or other transfer, and there is no want for such definitions and strong decisions to that effect, but here the word dispose is used in connection with the word "sell," and they are followed by the limitation of a public or private sale, which necessarily restricts the word dispose to a public or private sale and does not permit it to be considered in connection with the proceeds of a sale and the making of gifts for charitable or religious purposes. The testator gave his sister "full power and authority to sell and dispose of any and all of such property at public or private sale and upon such terms and conditions which may be deemed suitable to her." The next clause has a different verb, namely, "to use," so that we cannot properly regard the word "dispose" as intended to be read in connection with the use of the proceeds of the sale. It would in effect require the elimination of this word from its connection with the word sell and the transferring of it to the next clause so as to couple it with the term "use the proceeds." This would be a strained construction.

The next clause gives the sister "full power and authority to use the proceeds thereof for her support and convenience or for reinvestment or for gifts to charitable or religious purposes." To use is "the act of employing anything or applying it to one's service, . . . . conversion to some purpose" (4 Words and Phrases, 2d Ser., 1104), a very decidedly different way of handling the proceeds from that by devise or bequest. The use of the proceeds for gifts was coupled with the use for support and convenience.

The next clause gives the donee full authority to make deeds to any and all his real property, which is sometimes and very properly argued as coming under the rule that where one mode is definitely named it naturally excludes all others. It can at least be said this clause might modify the rule above stated that where no mode of exercising the power conferred is designated it could be done by either. It now stands with one mode definitely approved and thus far silent as to the other.

For further aid in determining the matter we turn to the ex-

pressed and implied intention of the testator which is, as was said by Chief Justice Marshall and quoted by our Justice Mason in the case of *Pearson v. Orcutt,* 106 Kan. 610, 616, 189 Pac. 160, that courts should "always look upon the intention of the testator as the polar star to direct them in the construction of wills." In the first place, it will be observed that the testator gave his sister, Mrs. Robinson, only a life estate with all the rents and profits during her lifetime and with remainder after her death to his niece and nephew. Under these provisions alone there could have been no diminution of the estate, but it would have passed entirely and completely to the niece and nephew after the death of the sister. But the intervening clause we have heretofore been considering, conferring power and authority to sell and dispose of the same at public or private sale and to use the proceeds for support and convenience or for reinvestment or for gifts to charitable or religious purposes, must be considered in connection with the provision for life estate and remainder, and this provision must have its full force in the composite expression either as modifying or defeating the other. If the use of the proceeds for support and convenience or for gifts to charitable and religious purposes is regarded as the paramount or dominant purpose of the testator, it would have the effect of changing a life estate into a fee or absolute ownership and completely destroying the remainder. We must determine from the entire will and all the surrounding circumstances which was the dominant purpose of the testator.

It was held in *Carlyle v. Pee,* 125 Kan. 727, 265 Pac. 1113:

"A beneficiary entitled to a life estate under the provisions of a will may not destroy the rights of a remainderman by disposing of the property by gift or devise." (Syl. ¶ 2.)

A full and complete use of the proceeds to the extent of exhaustion would be inconsistent with the thought of a remainder. In some cases cited the wills contain such expressions as "all property remaining at her death," "the remainder if any," "whatever remains," "all undisposed property at her death," which clearly recognize a contemplated use and diminution of the property itself, but here the testator devises and bequeaths to his niece and nephew "all of my said property or the proceeds of the reinvestment of the same," which does not in terms contemplate any diminution of the property. It expressly covers his entire property and only recognizes the changed condition thereof by the "reinvestment of the same."

We cannot escape the conclusion that the dominant purpose of the testator in disposing of his property was to give to his sister a life estate with the remaining estate, and not the remainder of the property, to his niece and nephew, and that the use of the proceeds for her support and convenience and for gifts to charitable or religious purposes was merely incidental thereto. To make the gifts to charitable and religious purposes the dominant purpose of the donor and the life estate and remainder merely incidental thereto is not in harmony with the plain and ordinary use of the words and expressions employed by the testator, nor in line with the usual and general inclination of parties sufficiently interested in relatives to name them in such connection as beneficiaries. Another emphasis placed by the testator upon the importance attached to the remainder is the unusual precaution taken by him to state the relative proportion in which the remainder should go to them in case his sister should fail to designate a proportion.

If the life estate and the remainder are the dominant purposes of the will, which we hold they are, that feature contributes to and materially strengthens the view that the gifts authorized to be made, being only incidental, must be made by the only mode expressed, viz., by deed or transfer *inter vivos*, which is the only mode that is consistent with preserving the life estate and a remainder.

Several cases are cited placing a construction upon the words "at her death." The constructions are not especially helpful because the contexts are different, and also because in this case we have the term "after her death," which may be subject to a slightly modified construction.

Appellee relies strongly upon the decision in the case of *Sinke v. Muncie*, supra, where it was held that the mode of exercising the power not being limited by the will could be either by will or deed, but there the wife was given a life estate "to have and to hold the same during her natural life and at her death to dispose of all of the remainder of the property among the children and their heirs, as she may deem best," thus providing for a disposal of the remainder by her at her death. There were two ways in which she could dispose of the remainder at death.

In the case of *Mansfield v. Crane*, 116 Kan. 2, 225 Pac. 1087, it was held that the wife who had been given a life estate in the property could not dispose of it by will, where it provided "that all of my real estate and such of my personal property as may remain after her death shall be divided equally between" certain relatives.

In the case of *Pearson v. Orcutt,* supra, the testator devised and bequeathed to his wife all of his property with power to sell and dispose in any way she may desire, followed by this modification: "But I further direct that in case that she shall not have sold or disposed of all of my said property prior to her death, then out of such of my estate as shall remain (one bequest of $50) and the remainder thereof shall be divided among my five children." It was there held:

". . . that the will gave to the widow a life estate coupled with a qualified power of disposition of the fee, and that the power did not extend to the making of such conveyance. [She having executed a deed to a grandson.]" (Syl.)

In the case of *Scott v. Gillespie,* 103 Kan. 745, 176 Pac. 132, it was held that the will gave to the wife a life estate with power of disposal and remainder to the children, where it devised to her all the residue of his estate to have and enjoy, sell or dispose of in any manner she may see fit, and upon her death all the property she may die seized of shall then be distributed among the children, share and share alike.

In the case of *Markham v. Waterman,* 105 Kan. 93, 181 Pac. 621, the will was held to give the wife a life estate with power of disposition and remainder in the children, where it made the wife the "real owner" with "complete control," and after death his executor shall determine the amount and value of all the property and it shall be divided equally between the children.

In the case of *Ernst v. Foster,* 58 Kan. 438, 49 Pac. 527, it was held that the will gave the wife a life estate with power to dispose of the fee and the property undisposed of at her death to descend to three heirs, where it gave to the wife all the residue of the property, real and personal, to have and to use and to dispose of during her natural life and after her death to be divided equally among three certain heirs.

Many cases are cited by appellants and appellee from other states in support of their contentions, and while they all shed light upon the way and manner of arriving at a proper construction, none of them contain the exact language used in the will in this case nor the arrangement of the several parts, and the surrounding circumstances in most cases are very different.

Two well-considered Massachusetts cases cited and urged respec-

tively by the appellee and the appellants serve to show how nearly independent each and every such case of will construction must be: The first is *Burbank v. Sweeney*, 161 Mass. 490, and the second, *Ford v. Ticknor*, 169 Mass. 276. In the first case the testator gave—

". . . all his estate to his wife for life with remainder over of portions thereof to nephews and a charity, and the residue he left to his wife 'to dispose of as she may deem expedient, but in the event that she should make no disposition of the same during her lifetime, I give the remainder of my estate not disposed of above to my heirs at law.' *Held,* that the wife was given a power of disposal thereof by will as well as by deed during her life." (Syl.)

In the second case, decided three years later, E, a tenant in common with his wife R, gave her by will his entire estate "to hold to her during her lifetime with full power to use and dispose of the same as she shall deem right and proper," and after her decease the remainder to his son "to hold to him and his heirs forever." It was held that the power of disposal in the wife did not extend to a disposal by will. In the opinion the court in commenting on the earlier case, cited by the respondent, compared and contrasted the two cases as follows:

"But in that case the testator, having no children, gave out of the remainder after the life estate legacies to two of his heirs, and left the rest for his wife to dispose of as she might deem expedient, he himself disposing of it only 'in the event that she should make no disposition of it during her lifetime.' There the dominant purpose of the clause which was held to give the power of disposal by will was to authorize the wife to dispose of the property, and the testator disposed of it only in the event that she did not. Here the dominant purpose is to give the wife a life estate, with a remainder given by the testator to his son, and the power of disposal is merely incidental to the life estate to make it fully effectual, and so that, if she deems best, her use of it during her life may exhaust the full value of the property. We regard the power in the present case as one only to be exercised during the active enjoyment of the life estate, and in aid of that enjoyment." (*Ford v. Ticknor,* supra, 280.)

We conclude that the Sutton will did not authorize Mrs. Robinson to make gifts of the proceeds of his estate by will.

The trial court found that Mrs. Robinson had by her will designated in writing the shares or portions the niece and nephew should take in the Sutton property when she in her will devised and bequeathed to them respectively $10,000 and $3,000, or in other words in the proportion of ten to three. The Sutton will where it gave the niece and nephew the estate in remainder provided that they should take it "in such shares as shall be designated in writing by my said sister," and further that should she fail to designate the proportion,

they shall take share and share alike. This provision plainly author-
ized the sister to make a designation in writing of the proportionate
shares they should take in his estate and we concur in the holding of
the trial court that the bequests made to the niece and nephew in
Mrs. Robinson's will constitute a compliance with that authoriza-
tion, at least to the extent of the bequests, to the niece, Myra Har-
vey, $10,000, and to the nephew, Harry E. Judge, $3,000. It will be
necessary to determine whether that proportion of ten to three shall
apply to any amount beyond $13,000, or the undivided one-half
interest in the residence property, or whether the sister may be con-
sidered as having failed to designate the proportion beyond $13,000
·and in the real estate. We conclude that no designation was made
by the sister of proportionate shares as to personal property beyond
$13,000, nor as to any real property, and that she having failed to
make such designation the shares for such additional amount of
personal property, if any, and for the real estate shall be between
the niece and nephew, as indicated in the Sutton will, share and
share alike.

· We find there was evidence to support the finding of the trial
court that the only property in the hands of the executor directly
traceable to the Sutton estate or the reinvestment of the same con-
sists of a half interest in two notes of $17,500 and $12,500, and a
half interest in the balance due on an $1,800 note shown to be $600,
making a total of $30,600, the half of which is $15,300.

There was also evidence to support the finding that the ten shares
of stock in the Union Telephone Company belonged to Mrs. Robin-
son, and that the bank deposits were not traceable to the Sutton
estate.

The judgment is reversed in so far as it approved the payment of
legacies for charitable and religious purposes out of funds or prop-
erty coming from the Sutton estate, and is affirmed as to the bequest
of the telephone stock and the disposition of the real property, no
appeal being taken.as to the latter item.

The judgment is reversed and the cause is remanded with instruc-
tions to render judgment in accordance with the views herein ex-
pressed.

JOHNSTON, C. J., BURCH and HUTCHISON, JJ., dissenting.