157    457|
206   ¹633|

## Cake's Estate.    Cake's Appeal

*Decedent's estates—Liens—Revival—Sale of real estate—Mortgages on other lands—Covenant to pay debt of another—Act of Feb. 24, 1834.*

The creditors of a decedent who have not revived by scire facias the lien of their debts within five years after the death of the decedent, cannot participate in a fund raised by the sale of decedent's real estate eleven years after his death, under the act of Feb. 24, 1834, P. L. 77.

Mortgages upon other lands of the decedent and a covenant in the nature of a guarantee for the payment of the debt of another, not filed in the prothonotary's office under the act of 1834, or upon which no sci. fa. has been issued for five years, are included in this rule.

Argued May 22, 1893. Appeal, No. 98, Jan. T., 1893, by J. A. Cake, from decree of O. C. Northumberland Co., May T., 1891, No. 43, dismissing exceptions to adjudication in estate of J. W. Cake, deceased. Before STERRETT, C. J., WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Adjudication of administrator's account.

The account was referred to William A. Sober, Esq., as auditor, who found the facts substantially as stated in the opinion of the court below. Decedent died in 1879, and the real estate, the subject of the present contention, was sold by order of court in 1890.

Exceptions to the auditor's report were dismissed by the court in an opinion by ALBRIGHT, P. J., of the 31st judicial district, specially presiding, which was as follows:

" 1. Claim of S. P. Wolverton, Esq. : The intestate made his
bond and mortgage (the mortgage did not include the lands
held by the administrator) of date of July 12, 1877, to J. Adam
Cake for the payment of $8,000 on July 12, 1882, and which
the latter assigned to Mr. Wolverton on April 20, 1882. On
a sheriff's sale of the mortgaged lands $5,385.49 was made and
is credited by claimant as of Dec. 1, 1886. The unpaid part
of the debt created by the bond, $6,977.17, with interest, is now
demanded. Its rejection is the error alleged by the 6th ex-
ception.

" The claims of J. Adam Cake are these :

" (1) The sum of $10,535.65 (credited in the account) which
is based on and explained by the following acknowledgment
and covenant of the intestate : ' Whereas my son, J. Adam
Cake, made a bond and mortgage to Jacob Huntzinger, of Potts-
ville, for $10,000, and borrowed the money for me. Mortgage
dated the 4th of October, A. D. 1874. The mortgage was given
as security for the note of J. Adam Cake, indorsed by J. W.
Cake and H. L. Cake, which is to be renewed from time to time
for five years from October, 1874. Now this is to certify that
as the money was borrowed for me and that I received it, and
used in my business, I promise to pay it at the end of the five
years above mentioned. Witness my hand and seal and keep
the said J. Adam Cake harmless. December 25, 1876.

" ' J. W. CAKE. [SEAL.] '

" That J. Adam Cake paid the debt above referred to, amount-
ing to $7,116.93 (the last part thereof on April 20, 1882), was
found by the auditor, and there is now no dispute concerning
the fact of payment. Its rejection is complained of by the 1st
and 2d exceptions to the auditor's report.

" (2) The sum of $10,902.35 (credited in part in the account)
upon a bond and mortgage made by J. W. Cake, the decedent,
to J. Adam Cake on July 10, 1877, for the payment of $14,000
on July 10, 1882. The mortgaged premises were sold by the
sheriff, and the proceeds, $12,105.68, credited as of Oct. 27, 1884.
Credit was taken in the account for $5,000, the whole of
$10,902.35 was claimed out of the fund before the auditor. Its
disallowance is the subject of the 3d and 4th exceptions.

" (3) Thirteen thousand fifty-eight dollars and ninety-three
cents, for which credit was taken in the account and which is

alleged to be owing on a bond and mortgage made by J. W. Cake to J. Adam Cake on July 10, 1877, for the payment of $8,000 on July 10, 1882. The lands included in this mortgage were sold under this or a prior mortgage, and $1,792.90 credited as of Sept. 3, 1883. The 7th exception in general terms alleges error in not allowing this demand. . . .

" Was the debt represented by the covenant of Dec. 25, 1876, or that created by any of the bonds held by J. Adam Cake and Mr. Wolverton a lien upon the land sold, at the time its sale was decreed? Was that land at that time liable in the hands of the heirs for said debts ? If as to none of said claims there was a lien, then the land was not liable, and then the creditors cannot take the proceeds from the heirs. The sale of the land upon the administrator's petition, the other heirs not having been made parties to the proceeding, cannot prejudice them. That requires no demonstration.

" Other debts were included in the schedule accompanying the petition. One other at least was regarded by the auditor and all concerned to have been a lien. No party to this controversy suggests that the sale was not valid. All concede its validity by claiming the proceeds thereof.

" ' No debts of a decedent except they be secured by mortgage or judgment shall remain a lien on the real estate of such decedent longer than five years after the death of such debtor unless an action for the recovery thereof be commenced and duly prosecuted against his heirs, executors or administrators within the period of five years after his decease, or a copy or particular written statement of a bond, covenant, debt or demand, where the same is not payable within the said period of five years, shall be filed in the office of the prothonotary of the county where the real estate to be charged is situate, and then to be a lien only for the period of five years, after said bond, covenant, debt or demand becomes due : ' Act February 24, 1834, § 24, P. L. 77.

" A creditor of a decedent can enforce payment out of land by obtaining judgment against the representative and then proceeding by scire facias against the widow, heirs or devisees, and obtaining a judgment de terris : Sec. 34 of same act ; Murphy's Ap., 8 W. & S. 165 ; Atherton v. Atherton, 2 Pa. 112.

" The covenant of Dec. 25, 1876, was enforceable on Oct. 4, 1879 ; exceptant's counsel urges that an action accrued only

when J. Adam paid the debt on April 20, 1882—if this were conceded it would not change the situation. The $14,000 bond and that for $8,000 were due on July 10, 1882. The bond held by Mr. Wolverton was payable on July 12, 1882. The intestate died on June 1, 1879. There was no copy or statement of any of the four demands just referred to filed in the prothonotary's office, and no action was brought upon the said covenant, nor upon any one of said three bonds. The decree of sale was made and the land sold in 1890.

" In Hope v. Marshall, 96 Pa. 395, it was held that where an intestate had died on June 12, 1867, and suit on a debt owing by him was brought in 1871, judgment obtained in 1873 and scire facias on said judgment against the widow and heirs issued on Dec. 26, 1877, a judgment against the widow and heirs could not be sustained; that the lien of the decedent's debts against the lands of the widow and heirs was barred by lapse of time, the scire facias having issued more than ten years after the decedent debtor's death.

" Phillips v. Railroad Company, 107 Pa. 460, decides that where the intestate debtor died on April 14, 1874, and suit was brought by the creditor against the administrator on Dec. 20, 1875, judgment recovered on Jan. 2, 1883, scire facias against the heirs issued on Jan. 10, 1883, and judgment therein entered on March 28, 1884, the judgment was binding on the heirs, the action against the administrator having been duly prosecuted within the meaning of said act of 1834, the judgment in the action against the administrator having been obtained within five years after the expiration of the statutory lien of five years after death, and the suit brought during the first period of five years. Proceedings to charge the real estate of a decedent in the hands of his widow and heirs must be brought within ten years from the decedent's death: Allen v. Krips, 119 Pa. 1; Allen v. Krips, 125 Pa. 504.

" Though the administrator advance his own funds in payment of debts due by decedent within five years from his death, it will not prolong beyond that time the existence of the lien: Demmy's Ap., 43 Pa. 155.

" The 24th section of the act of February 24, 1834, did not create a lien; it limits the liens which prior to legislation on this subject were indefinite; the act of 1834, as well as the

prior act of 1797, is an act of limitation and repose (citing Kerper v. Hoch, 1 Watts, 9, and Church v. Watson, 50 Pa. 518; Justice PAXSON in Colwell v. Rockwell, 100 Pa. 133.

" The auditor rightly refused to distribute any of the proceeds of the land upon said debts because they had ceased to be liens on the land before its sale was decreed.

" Exceptant's counsel contends that the paper of December 26, 1876, was not evidence of a debt of the decedent, and therefore is not within the meaning of the act of 1834; that said act applies only to debts existing at the time of the decedent's death; that said undertaking is in the nature of a warranty; that only when J. Adam paid Huntzinger did a right of action accrue.

" The reply to that contention is that the question presented is whether or not the claim was a lien on the land at the time the sale was decreed, not whether there could be a recovery in an action against the administrator or a right to payment out of personal effects of the intestate.

" If the undertaking was not a debt created by the decedent, then it was no debt at all; if it was no lien existing at the time of the intestate's decease, then it never became one. A further answer is furnished by the case of Hunt's Ap., 105 Pa. 128. There the decedent had entered into a covenant guaranteeing the payment of interest upon a mortgage until the mortgaged premises should be so improved as to constitute adequate security. It was held that such covenant survived the decedent and could be enforced against his representative so as to recover interest accruing after decedent's death; also that the lien of such covenant could only be continued against the real estate of the decedent by bringing suit within five years or by filing a copy of the covenant within five years.

" As to the rejected claims which were secured by mortgages, it was argued that they are within the exception of said act of 1834; that being debts secured by mortgages, they were an indefinite lien on the land not embraced in the mortgages; that the purpose of the act was that the heirs should have notice of debts; that the mortgages and the writs of scire facias thereon furnished all the notice of the debts that said statute contemplates. On this point Rushton v. Lippincott, 119 Pa. 12, is cited. Shannon v. Newton, 132 Pa. 375, is also referred to as authority for the principle that an heir is a mere volunteer and

takes what is left after his ancestor's debts are paid, that he is
not a terre tenant, and the principle is invoked in support of
said claims.

"Shannon v. Newton recognized what had been decided long
before, that judgment against a decedent in his lifetime re-
mains a lien against him, his heirs and devisees, without revival
within five years from its entry; and it decides that the Act of
June 1, 1887, P. L. 289, relative to the liens of judgments does
not affect said rule. But how can that affect the exceptant's
case?

"By judgment in that reference is of course meant a per-
sonal judgment, the decision of the law that the defendant is
indebted to the plaintiff in a sum specified. Here there was no
judgment in intestate's lifetime, not even judgment under a
scire facias on the mortgages; if there had been the latter it
would not have benefited the exceptants, for plainly the judg-
ment meant by the statute is not a judgment under a scire fa-
cias on a mortgage.

"All that is decided in Rushton v. Lippincott, that could
possibly be thought to affect this case, is that an action of cove-
nant upon a ground rent deed where it is not sought to enforce
the judgment against real estate other than that bound for the
rent, is not within the provision of said act of 1834 requiring the
widow and heirs to be made parties thereto.

"Notice or knowledge by the heir of his ancestor's death
does not make such debt a lien if otherwise it would have been
none. No statute or decision declares that it does. All the
debts of the ancestor known or unknown to the heir or repre-
sentative of the estate are liens. The act of 1834 limits the
duration thereof.

"In Bindley's Ap., 69 Pa. 295, land was sold within five
years of the decedent's death and a creditor presented his claim
before an auditor distributing the proceeds, and received a pro
rata dividend. More than five years after the death other land
was sold and said creditor sought payment out of the fund of
the residue of his demand. Upon objection that his debt had
ceased to be a lien, it was urged in his behalf that the claim
before the auditor was an action commenced—that the act of
1834 does not speak of a common law action, and that he had
given notice of his debt against the estate in a mode pointed

out and authorized by law. In deciding against the claimant and distributing the fund among the heirs the court said that the intention of the 24th section of the act of 1834 was to promote the security and repose of titles in the hands of the heirs and devisees as well as purchasers from them, and it would imperil said objects to give the section so broad a construction as contended for, and that the words of the act in their technical sense were to be adhered to.

" That said act of 1834 means that a debt secured by a mortgage of one tract is by reason of such mortgage a lien on all the other real estate of a decedent indefinitely, is so plainly not the case that a discussion is scarcely necessary.

" None of these mortgages contain an express covenant to pay—therefore an action of debt thereon could not have been maintained: Scott v. Fields, 7 Watts, 360; Fidelity Co. v. Miller, 89 Pa. 26. The only obligations or evidences of these debts are the bonds.

" The instruments evidencing these rejected claims are specialties and are not barred by the statutes of limitation. If there is personal estate of the intestate the claimants have valid demands as to it. But they are not entitled to this fund because the lien on the land of the debts had expired before it was ordered to be sold."

*Errors assigned* were(1–6) dismissal of above mentioned exceptions, quoting them.

*C. M. Clement, S. P. Wolverton* with him, for appellant, cited: Com. v. Cochran, 146 Pa. 223; Stewart v. Montgomery, 23 Pa. 410; McBride's Ap., 72 Pa. 480; Rushton v. Lippincott, 119 Pa. 12; Shannon v. Newton, 132 Pa. 375; Woods v. Irvin, 141 Pa. 278; Bucknor's Est., 18 W. N. C. 118; Newman v. Metzgar, 1 Pearson, 273; Myers v. Kingston Coal Co., 126 Pa. 582; Wetherald v. Van Stavoren, 125 Pa. 535.

*George B. Reimensnyder, Geo. Hill* with him, for appellees, adopted the opinion of the court below as their argument.

PER CURIAM, October 2, 1893:

The decedent, Joseph W. Cake, having survived his wife,

died intestate June 1, 1879, leaving issue four children, J. Adam Cake, appellant, Joseph W. Cake, Alice E. Lowery and Amy B. Adams. Six days thereafter letters of administration were issued to said J. Adam Cake, who more than eleven years thereafter presented his petition to the orphans' court and obtained therefrom an order for the sale of certain real estate of which his father died seized. The sale thereof, realizing $30,462, was confirmed September 9, 1890, and an account, embracing nothing save said proceeds, was filed January 31, 1891. After taking credit for expenses of sale, etc., the accountant balanced his account by crediting himself with the residue as applicable to claims of his own. To that disposition of the residue the other heirs excepted and an auditor was appointed to pass upon said exceptions. There was no serious dispute as to the material facts, all of which are fully set forth in the elaborate report of the learned auditor. The matters considered and passed upon by him, and again by the court on exceptions to his report, were said claims of the appellant J. Adam Cake, and a claim presented on behalf of S. P. Wolverton, Esquire. With the exception of $2,000, and interest, due on a judgment recovered by the Government National Bank, and held by said J. Adam Cake, the claims aforesaid were rejected mainly because they were not liens on the property from the sale of which the fund was realized, and therefore not entitled to participate in the distribution thereof. After deducting expenses of sale, costs of audit, etc., and the National Bank judgment above mentioned, the residue was distributed to and among said four children of the intestate. Exceptions to the auditor's report were heard and disposed of by the learned president of the thirty-first judicial district, who, in the decree now before us on appeal, dismissed the exceptions and confirmed said report.

The questions involved in the specifications of error are so clearly presented in the exhaustive opinion of the specially presiding judge that re-statement of them is unnecessary; and, in view of the painstaking consideration that was given to those questions, not only by the learned auditor but afterwards by the court, and also, of the manifest correctness of their conclusions, it does not appear to us that any of said questions require either special notice or further discussion. Notwithstanding the able argument of appellant's counsel, an examina-

tion of the record, with special reference to the controlling questions presented therein, we are not convinced that there is any error in either of the learned court's conclusions that requires a reversal or modification of the decree. So far as said conclusions are material to a just determination of the case, they are abundantly sustained by the authorities cited in the opinion and applicable to the facts.

The insuperable difficulty, in the way of the rejected claims, is that they had ceased to be liens on the land, from the sale of which the fund in question was raised. Assuming them to have been valid claims against the estate of the intestate and therefore liens on the real estate of which he died seized, they were not liens thereon at the time the sale was ordered, and therefore not entitled to participate in the distribution.

Decree affirmed and appeal dismissed at appellant's costs.