Argued at Pendleton October 28; affirmed November 26, 1940

# DRIVER ET AL. *v.* BLAKELEY

(107 P. (2d) 524)

*F. M. Phelps*, of Portland (Phelps & Burdick of Portland, on brief), for respondents.

*Francis V. Galloway*, of The Dalles (Galloway & Krier, of The Dalles, on brief), for appellant.

KELLY, J. On March 4, 1919, Samuel B. Driver died in Wasco county, Oregon, leaving a last will dated November 6, 1914, naming the defendant herein, George C. Blakeley, and Judge Fred W. Wilson as executors and trustees.

Among other provisions, said will contained the following, the same being paragraph IV thereof:

"IV

For the purpose of carrying out the trust mentioned and provided for in this paragraph, I hereby bequeath and devise to the said George C. Blakeley and Fred

W. Wilson, as such Trustees, in trust for the sole use and benefit of my said wife, Rachel A. Driver, the sum of Nine Thousand Five Hundred Dollars ($9500.00), which said sum is to be cared for, protected and conserved by the said Trustees for the sole use and benefit of the said Rachel A. Driver, during her lifetime, and shall be invested by the said Trustees in first class security, in first mortgages upon real estate of good and sufficient security, and the income derived and to be derived from the investment of said sum of $9500.00 shall be paid to the said Rachel A. Driver for her maintenance, use and benefit, during her lifetime, and after the death of the said Rachel A. Driver, said sum of $9500.00 together with any increase there may be to said sum by reason of its judicious investment, if any, shall be divided equally between my children hereinafter named, to-wit: Percy B. Driver, Lena E. Woodcock, and Paine Driver, and in case any of my said children above named shall not be living at the time of the death of my said wife, Rachel A. Driver, the children then living of such deceased child, shall inherit the distributive share of such trust fund mentioned in this paragraph, which would pass to such deceased parent, by right of representation.''

One of the further provisions of said will bequeathed in trust to defendant and Judge Wilson $6,000 for the maintenance and education of three grandchildren of the trustor, said sum to be distributed in equal respective amounts to said grandchildren as each of them respectively attained the age of 25 years.

Doubtless, because of his judicial position acquired subsequent to the execution of said will, but before the death of the testator, Judge Wilson declined to act as coexecutor and cotrustee; and, for that reason, the defendant served as sole executor and trustee.

As executor, the defendant promptly concluded the probate proceedings.

On July 11, 1927, defendant purchased a note and mortgage, dated October 9, 1923, executed by John Gorman, payable three years after date to Albert Lawson. On January 22, 1925, John Gorman executed two deeds by which he transferred to his two daughters the property thus mortgaged to Lawson. One of those daughters was then, ever since has been, and now is, the wife of the defendant herein. The other daughter is Mrs. Margaret H. Ordahl.

In November 1926, John Gorman died leaving no estate for probate.

The note and mortgage purchased by defendant of Lawson were transferred and assigned without recourse.

On February 3, 1938, Mrs. Ordahl executed a quitclaim deed conveying her interest in the mortgaged property to defendant's wife.

The property consists of a parcel of real estate, 100 feet square, at the corner of 19th and Overton Streets in Portland, Multnomah county, Oregon, upon which there were four residential buildings.

The controlling question is whether, in purchasing the note and mortgage aforesaid, and failing to collect the principal sum and accrued interest, and in failing to foreclose said mortgage, defendant complied with his duty as trustee.

■ At the outset, we think that it should be plainly stated that, in order to justify the surcharging of a trustee's account, it is not necessary that there be proof either of fraud or of intentional wrongdoing.

The law prescribes a course which must be followed by a trustee in order to warrant an approval by the court of his accounts. In this case, we think that, with reference to the note and mortgage above mentioned, such a course has not been pursued by defendant.

■ The testimony is somewhat conflicting as to the value of the property in suit in July 1927. We are impressed with the testimony of plaintiffs' witnesses and think that it preponderates. It indicates that in 1927 the property, when being considered as security for a mortgage loan, was worth approximately $6,500. This valuation does not support a loan of $5,000 of trust funds. Vol. 2, Scott on Trusts, § 229.

We have not failed to give consideration to defendant's showing as to the rental value of the property at that time; but deem it an incident that requires the restrictive appraisal accorded to it by plaintiffs' realty experts. These witnesses indicated that rental income, while having a "use" value, merited little consideration in appraising realty as security for a mortgage loan. For the purpose of a long-term investment of trust funds, the consideration to be given to rental income differs from that which is proper in making a current annual assessment thereon for tax purposes. Defendant called as one of his witnesses Mr. T. R. Maguigan, deputy assessor of Multnomah county, who testified that the value of the houses on the property depended upon the rental received from them.

■ We are also influenced by the entire lack of any individual liability upon the note and mortgage when defendant made the purchase. In an early New York case, it was declared that investment of trust funds may not be made in mortgage securities executed by insolvent mortgagors. 'In re Randolph, 134 N. Y. S. 1117, 1119; affirmed without opinion in 150 App. Div. 902, 135 N. Y. S. 1138.

We quote from the opinion in In re Randolph, supra:

"While a loan on personal security alone is improper for trustees (Bogart v. VanVelsor, 4 Edw. Ch.

718, 722; Smith v. Smith, 4 Johns. Ch. 281), a loan
on the faith and credit of the real property offered
as collateral seems to me to be equally improper
(Rogers v. Paterson, 4 Paige, 409; Eckford v. DeKay,
8 Paige, 89). There must now be a reasonably solvent
maker of the principal obligation and adequate se-
curity in order to justify trustees in investing a trust
fund in bonds secured by mortgages on real property.

If I am right in the foregoing review of the general
principles regulating the investments of trustees in
bonds and mortgages of real property, then it is ap-
parent that the rights and remedies of the trustee on
the bond should always be taken into account by a
prudent trustee. The right in re and the right in per-
sonam should both be perfect. If these are imperfect,
the loan is as to him improper.''

A recent New York case quotes approvingly from
the Randolph case. *In re Richards' Will*, 10 N. Y. S.
(2d) 510, 517.

Slight, if any, difference appears to us whether,
on the one hand, personal liability has been eliminated
by death and by endorsement without recourse, or, on
the other hand, the same result ensues because of
insolvency.

■ It is also a cardinal rule of the law of trusts that
a trustee may not borrow from a trust fund in his
charge; (Vol. 2, Scott on Trusts, § 170.17, p. 888, and
authorities there cited in note 5; *Estate of Jones*, 10
N. Y. St. Rep. 176, 181) nor manage the affairs of the
trust property so as to gain any advantage directly or
indirectly for himself beyond his lawful commission.
*Murphy-Bolanz Land & Loan Co. v. McKibben*, (Tex.
App.) 221 S. W. 560, quoting Pomeroy's Equity Juris-
prudence, Vol. 3, §§ 1075, 1077, 1080. *Murphy-Bolanz
Land & Loan Co. v. McKibben*, supra, is affirmed by
the Supreme Court of Texas in an opinion: 236 S.

W. 78; *Thurston v. Nashville & American Trust Co.*, 32 F. Supp. 929.

"There is a well-established rule in equity that trustees and all other fiduciaries are forbidden from dealing in their own behalf with respect to matters involved in the trust, and this prohibition operates irrespectively of the good faith, or bad faith, of such fiduciaries. * * * It was the duty of the trustees to refrain from placing themselves in any position which would subject them to conflicting duties with respect to any matters involved in the trust. Munro v. Smith (C. C. A.) 259 F. 1; Backus v. Finkelstein, et al. (D. C.) 23 F. (2d) 357; Oil Fields Corporation v. Dashko et al., 173 Ark. 533, 294 S. W. 25." *Booth v. Greer Investment Co.*, 52 F. (2d) 857.

Upon appeal of the case last above cited, and from which the foregoing quotation is made, to the United States Circuit Court of Appeals of the Tenth Circuit, the appellate court in affirming the portion of the decree from which the appeal was taken, included the following statement in its opinion:

"Finally, it was the duty of the trustees to manage the assets of the Trust" [The Petroleum Royalties Company] "for the benefit and advantage of the shareholders, and not with an eye to their personal advantage and profit. Magruder v. Drury, 235 U. S. 106, 119, 120, 35 S. Ct. 77, 59 L. Ed. 151; Murphy-Bolanz L. & L. Co. v. McKibben (Tex. Com. App.) 236 S. W. 78, 80; Perry on Trusts (6th Ed.) Vol. 1, § 427." *Greer Investment Co. v. Booth*, 62 F. (2d) 321, at p. 325.

There is a principle in the law of trusts, sustained by reason and authority to the effect that the rule against a trustee's profiting at the expense of the beneficiaries of the trust applies to cases wherein the spouse of a trustee is the recipient of such profit.

*Dundas's Appeal,* 64 Pa. St. 325; *In re Cake's Estate,* 157 Pa. 457, 27 A. 773.

"A recent expression of this application of the rule is found in Matter of Fulton's Will, 253 App. Div. 494, 2 N. Y. S. 2d 917, in which a confirmation of a sale by an executrix to her husband was reversed, the court saying, 253 App. Div. at page 496 2 N. Y. S. 2d at page 919: 'This rule, that a beneficiary may at his option have set aside a conveyance of trust property by a trustee to her husband without showing more, is quite universal.' * * * A cestui que trust may disaffirm the sale and have it set aside whether it be bona fide or not and action by the court is not dependent upon the proof of actual injury for the court acts in such cases not so much in particular to protect the cestui que trust as to uphold and enforce the sound principle of public policy." In re Segal's Estate, 11 N. Y. S. (2d) 306, 309.

"A trustee cannot loan the trust fund to himself. Is he in a much better position when he loans it to his wife? Is he in that event in the neutral and prudent position which the court requires of him? Is he free to enforce the rights and remedies accruing on the bond of his own wife? It would certainly seem not; at least, he is not in the position to pursue them with that promptness, efficiency, and vigor which is demanded of trustees. In the exercise of those rights in this instance, for example, the trustee is likely to be in a conflicting position and to be tossed about between a desire to do his duty and a natural desire to be lenient and considerate of the debtor. Such a position for a trustee is manifestly an improper one, and it ought not, I think, to receive the formal sanction of the surrogate." In re Randolph, supra.

■ In the case at bar, it is beside the point that there was no actual loan made directly by the defendant to his wife and her sister. In purchasing a naked lien upon real property owned by them the defendant served their interests to a greater extent than if he had re-

quired them to execute a note secured by a mortgage upon the real property in suit. In the latter case, the transaction would have given the payee in the note a right in personam. We realize that no profit actually accrued to defendant by reason of the purchase of the mortgage in suit; but the owners of mortgaged property had the advantage of holding the property speculatively.

We are not unaware that the defendant properly and promptly administered the estate of the late Mr. Driver involving some $45,000 of assets and that, except as to the purchase of the note and mortgage executed by defendant's father-in-law, now deceased, no exception had been taken to the manner in which he has conducted the affairs of his trusteeship; but for the reasons herein outlined, we are constrained to affirm the judgment and decree of the circuit court, except as to the date when execution may issue upon said judgment. Defendant should have 30 days after the receipt by the circuit court of the mandate herein within which to pay said judgment. If, however, defendant fails to pay the same during said interval of 30 days, execution may issue as directed in the decree of the circuit court. With this formal modification, the decree of the circuit court is affirmed.

BEAN and LUSK, JJ., not sitting.