Nos. 42,049 and 42,050

ARNO WINDSCHEFFEL, as Special Administrator of the Estate of Charles M. Post, Deceased, MURIEL POST JEAKINS, MAY POST, WALTER MAXWELL, WILLIAM FAULHABER, SR., OPAL ORRISON, WILMA FAULHABER WISHART, WILLIAM FAULHABER, JR., EDGAR POST, LINNIE POST KENDRICK, ROY POST, HARRY POST, ESTHER POST and DAISY POST TUXHORN, *Appellees*, v. S. J. WRIGHT, CHARLES C. GOODALE, LEO GOODALE, CHARLES C. GOODALE as Administrator *De Bonis Non* of the Estate of Charles M. Post, Deceased, ULANA NOVAK, JEAN STORER, L. DEAN POST, DELLA POST, LILY POST, and MAXINE TUCKSEN, (S. J. WRIGHT, CHARLES C. GOODALE, LEO GOODALE, CHARLES C. GOODALE as Administrator *De Bonis Non* of the Estate of Charles M. Post, Deceased, Appellants), *Appellants*.

(860 P. 2d 178)

Opinion filed March 4, 1961.

*A. W. Relihan, T. D. Relihan* and *T. E. Relihan,* of Smith Center, were on the briefs for appellant Charles C. Goodale as Administrator *De Bonis Non* of the Estate of Charles M. Post, Deceased. *Geo. E. Teeple* and *Robert H. Meyer,* of Mankato, were on the briefs for S. J. Wright, Charles C. Goodale and Leo Goodale, appellants.

*Arno Windscheffel,* of Smith Center, *Douglas Hudson, Howard Hudson* and *Douglas G. Hudson,* of Fort Scott, were on the briefs for the appellees, and Lily Post and Maxine Tucksen, appellees. *Dallas Cordill,* of Osborne, was on the briefs for Ulana Novak, Jean Storer, L. Dean Post and Della Post, appellees.

The opinion of the court was delivered by

FATZER, J.: The appellees, who are the special administrator of the estate of Charles M. Post, deceased, and thirteen of the remaindermen designated in the decedent's will, commenced this action in the district court of Smith County to set aside certain deeds executed by Evaline Post Wright, the life tenant, and by her husband, S. J. Wright, upon the theory that the conveyances were violative of the power of sale given the life tenant and constituted a fraud upon the remaindermen. Six other remaindermen were named defendants but since they joined with the plaintiffs in opposing the appellants' demurrers to the plaintiffs' petition, reference is hereafter made to the plaintiffs of record and those six defendant remaindermen as the plaintiffs. The defendants Charles C. Goodale and Leo Goodale, who were also remaindermen, S. J. Wright, and Charles C. Goodale as administrator *de bonis non* of the estate of Charles M. Post, deceased, are hereafter referred to as the defendants, or as appellants, having appealed from the district court's order overruling their demurrers to the plaintiffs' petition.

Pertinent portions of the petition are summarized and quoted: Charles M. Post died testate on August 3, 1929. At the time of his death he owned certain real estate in Smith County among which was an undivided 7/9ths interest in 320 acres of land, the property here in controversy, which had a reasonable and fair market value of $14,000. His sister, Evaline Post, owned the other undivided 2/9ths interest in the same property.

The decedent's will was admitted to probate in Smith County. Evaline was named as executrix and having qualified, duly ad-

ministered the estate which was closed on August 11, 1930. It is noted that the title to the real estate was unaffected by the probate proceeding since the probate court then had no power or authority to adjudicate title to real property. (*Cessna v. Carroll,* 178 Kan. 650, 654, 655, 290 P. 2d 803.)

The second paragraph of the decedent's will bequeathed the income from all his personal property to Evaline for her lifetime with power to sell such portion as might be necessary for her care and comfort. She was also empowered to invest all monies which the testator died owning and all proceeds from the sale of personal property, if sold under the power of sale, in such manner as might seem to her to be for the best interests of the decedent's estate. Upon Evaline's death the remainder in the personal property was bequeathed to the living issue of the decedent's two brothers, Wilbert Post and Alonzo Post, and to the living issue of his two sisters, Emaline Goodale and Evaline Post, should she have any, share and share alike, but should any of the issue of his brothers and sisters be deceased leaving issue then the share that such deceased one would receive, if living, should go to his issue, share and share alike.

The third paragraph of the will, which gives rise to this controversy, devised and bequeathed all the testator's interest in the real property which he and Evaline had an interest in (the land in controversy), to his sister, Evaline, for her lifetime, including the rents and profits arising from the property. The testator then devised the remainder of his interest in such property, if it had not been sold, to the living issue of his brothers and sisters as described in the second paragraph of his will. However, he specifically gave to Evaline "power to sell the real estate in this THIRD paragraph of this my will and testament described whenever she shall see fit so to do, "but provided that the proceeds of any such sale should go to Evaline and be held by her and at her death, pass to the living issue of the two brothers and two sisters as provided in the second paragraph of the will.

The fourth paragraph of the will devised all other real property owned by the testator to his sister Evaline for her life with remainder in fee simple to the living issue of his two brothers and two sisters, making the same provision for the descent of the share of any deceased issue as provided in the second and third para-

graphs of the will. As to the real property devised by the fourth paragraph, no power of sale was given to Evaline.

After the death of the testator, Evaline married one S. J. Wright, on a date not disclosed by the record. On January 2, 1936, she conveyed the undivided 7/9ths interest in the real estate in question to her husband. The deed was recorded in Smith County on January 2, 1936, and recited a consideration of $8,711.08 and United States Revenue Stamps were affixed. In the deed itself appeared the following: "undivided 7/9 interest belonging to Charles M. Post at the time of his death and in which the grantor herein has a life estate with power of sale in and to (describing the land), this sale being made on the best judgment of the grantor and in pursuance of authority and power given her in the will of Charles M. Post, deceased, as of record and probate in the Probate Court of Smith County, Kansas."

On May 29, 1936, some four months and 27 days later, S. J. Wright reconveyed the land in question to Evaline in fee simple. The deed was duly recorded in Smith County on the day it was executed and recited a consideration of $1 and a United States Revenue Stamp was affixed. Evaline Post Wright was specifically named as grantee. In the body of the instrument appeared the following: "the undivided 7/9 interest owned by Charles M. Post at the time of his death and in which Evaline Post Wright had a life estate with power of sale in and to (describing the land)."

Evaline died testate on November 10, 1957, a resident of Freemont County, Iowa, and her estate was probated in that county. By the terms of her will she devised and bequeathed to her husband S. J. Wright the land in question (both 2/9ths and 7/9ths interests) for his life with remainder in fee simple to her two nephews Charles C. Goodale and Leo Goodale in equal shares. No proceedings were commenced to probate or record Evaline's will in the probate court of Smith County, Kansas, in connection with the pretended devise of the 7/9ths interest, although S. J. Wright claims to be the owner of a life estate in the land in question (including the 2/9ths interest), and Charles C. Goodale and Leo Goodale claim to be the absolute owners in fee simple subject only to the life estate of S. J. Wright.

Following Evaline's death and the probating of her will, the estate of Charles M. Post, deceased, was reopened and is being administered by Charles C. Goodale as administrator *de bonis non*

in the probate court of Smith County, Kansas. He filed a purported accounting in which he charged himself with a certain sum of money purporting to have come from Evaline's estate, which included an item of $8,711.08, pretending to be the consideration received by her from S. J. Wright although in fact that sum was never paid.

Charles M. Post, deceased, was survived by living issue of his brothers and sisters as follows: Nine children of his brother Wilbert Post; four children of his brother Alonzo Post, and two children of his sister Emaline Goodale, two of the defendant appellants, Charles C. Goodale and Leo Goodale. Thus, fifteen nephews and nieces survived the testator, each being the owner of an undivided 1/15th remainder interest in his real and personal property. Since his death on August 3, 1929, certain of the fifteen nephews and nieces have deceased leaving issue, so that upon the death of the life tenant, Evaline Post Wright, who died without leaving issue, there were twenty-one remaindermen, including Charles C. Goodale and Leo Goodale. While the petition alleged the respective interests of each of the twenty-one remaindermen, it is unnecessary to here set forth those interests except to say that Charles C. Goodale and Leo Goodale were the owners of an undivided 1/15th remainder interest under the terms of the will of Charles M. Post, deceased.

The petition alleged that the plaintiff Arno Windscheffel was appointed special administrator of the estate of Charles M. Post, deceased, by the probate court of Smith County and was authorized and directed to file this action to challenge the validity of the transactions between Evaline and her husband, and to seek to recover for the estate of Charles M. Post, deceased, and for those entitled thereto as remaindermen and their sucessors in interest the 7/9ths interest in the real estate in question.

The petition alleged that the purported conveyances of January 2, 1936, and May 29, 1936, were colorable only and no consideration passed between the parties thereto; that the recited consideration in the pretended conveyance from Evaline to her husband was grossly inadequate and no fund of any kind was received by her as a consideration for the deed purporting to convey the 7/9ths interest to him; that said purported transactions and the matter of said deeds was not a *bona fide* sale but was a mere colorable proceeding designed and carried out so that Evaline might acquire the fee simple title to the 320 acres of land to the exclusion

of the remaindermen's interest and for the purpose of setting up on paper only a minimum sum for ultimate accounting to the remaindermen; that the said deeds from Evaline to her husband and his deed reconveying the land to her were illegal and in fraud as a matter of fact and as a matter of law of the rights and interests of the plaintiffs remaindermen and their successors in interest, and that said deeds should be set aside.

The petition further alleged that upon the death of Evaline, the remaindermen and their respective successors in interest were entitled to the portion of the said 7/9ths interest in the real estate, to which they had been excluded, and to all the rents and profits from said real estate accruing after the death of the life tenant, and the plaintiffs tendered to the estate of Evaline or to her beneficiaries the sum of $8,711.08 and offered to do such equity as the court deemed appropriate. The real estate in question was alleged to be of the present value of $32,000, or more. The prayer was that the two deeds purporting to convey the land be set aside; that the court do such equity as may be deemed appropriate between the parties; that an accounting be had of all rents and profits accruing since November 10, 1957, and that the plaintiffs recover their costs.

Charles C. Goodale, as administrator *de bonis non* of the estate of Charles M. Post, deceased, separately demurred to the petition, and S. J. Wright, Charles C. Goodale and Leo Goodale also filed a demurrer to the petition. Both demurrers were overruled and separate appeals were taken. Upon agreement of the parties the appeals were ordered consolidated.

The appellants principally contend that Evaline had a valid, unrestricted and absolute power to sell the land in question and when she exercised that power and sold the realty to her husband, the remaindermen were divested and thereafter their only interest was in the proceeds of the sale which passed to them at her death under the second paragraph of the testator's will; that the deed from Evaline to her husband recited a consideration of $8,711.08 and that the conveyance was made pursuant to the power of sale contained in the will, and when executed, destroyed her life estate and the remainder interest; that her conveyance was not in contravention of the terms of any trust, express or implied, and did not violate any duty she owed to the remaindermen; that thereafter her grantee, and upon reconveyance, she, herself, held the fee openly, notoriously, ex-

clusively and adversely to the whole world and evidence of her claim of ownership has been recorded in Smith County since 1936, which gave the remaindermen constructive notice of her claim and of their ouster and disseizin; that the remaindermen are charged with the same care and diligence to preserve and protect their titles from assault and appropriation by third parties as are other owners and claimants and whatever right of action they had accrued to them in 1936; that the petition showed upon its face that the plaintiffs were ousted and disseized when the realty was sold and the deeds recorded in 1936 which set the statute in motion, and since more than twenty-three years has elapsed, the action is barred by G. S. 1949, 60-304.

Did Evaline have an unrestricted and absolute power to sell the property in the manner alleged and as admitted by the demurrers? We think not. Viewed in the light of existing conditions and surrounding circumstances, the scheme of Charles M. Post's will is plainly evident. Realizing that both his brothers, Wilbert Post and Alonzo Post, and his sister Emaline Goodale were married and had their homes and families, the testator directed that his unmarried sister, Evaline, be given the income from his personal property as long as she lived with power to invade the corpus, if necessary, for her care and comfort, and having personal trust and confidence in her judgment and discretion, he empowered her to invest his monies in such a manner as would seem to her to be for the best interest of his estate, and after her death, the remainder, if any, would go to the living issue of his two brothers and his sisters Emaline Goodale, and Evaline, should she have issue.

With respect to the land in question, the testator was cognizant that Evaline owned an undivided 2/9ths interest. While his primary concern was for her care and comfort, he also wanted to assist her to make title to the fee without the necessity of a partition action, should she desire to sell her interest during her lifetime. Hence, he devised his undivided 7/9ths interest to her for life with remainder (if the property was not sold) to the living issue of his two brothers and two sisters, and expressly gave Evaline power to sell the real estate, but provided that if she did, the proceeds be held by her for the benefit of the remaindermen subject to the same conditions and restrictions as contained in the second paragraph relating to the testator's personal property and its disposition.

Other real estate owned by the testator was devised to Evaline

for her lifetime with remainder in fee simple to the mentioned living issue of his two brothers and his two sisters, but without any power of sale in Evaline.

It is clear from the manifest intention of the testator that the power vested in Evaline by the third paragraph of the will was not a power to "dispose" of the 7/9ths interest, but was only a power to "sell" the property. (*Pearson v. Orcutt,* 106 Kan. 610, 614, 189 P. 160.) A power is not property, but is a personal authority (*Ryan v. Cullen,* 96 Kan. 284, Syl. ¶ 3, 150 P. 597), and a power of sale is not inconsistent with a life estate (*Bienvenu v. First National Bank of Atlanta,* 193 Ga. 101, 107, 17 S. E. 2d 257), nor does its existence enlarge a life estate into a fee (*Olsen v. Weber,* 194 Iowa 512, 187 N. W. 465, 27 A. L. R. 1370), or change the relation to the remaindermen when annexed to the life estate. (*Mallett v. Hall,* 129 Me. 148, 150 A. 531.) The power of sale did not authorize Evaline to use the property for another purpose, nor give it away, nor waste or squander it; nor could she devise it either by will or by a deed operating as a testamentary disposition. (*Pearson v. Orcutt,* supra; Anno. 2 A. L. R. 1248, 27 A. L. R. 1388; 69 A. L. R. 827; 114 A. L. R. 946.)

Because of the duty resting upon Evaline to preserve and protect the estate and remainder, she bore a fiduciary relation to the remaindermen and one defined in the law as a "trustee" or "*quasi* trustee." (*Phoenix Mutual Life Ins. Co. v. Nevitt,* 147 Kan. 772, 78 P. 2d 913; *Williams v. Morrison,* 242 Iowa 1054, 48 N. W. 2d 666; *Laval v. Osterhout,* 3 N. J. Super. 402, 65 A. 2d 866; *Morrow v. Person,* 195 Tenn. 370, 259 S. W. 2d 665; *In re Barnes' Estate* [Ohio], 108 N. E. 2d 88; *In re Gaffers' Estate,* 5 N. Y. S. 2d 671; *Wheeler v. Kazee* [Ky.], 253 S. W. 2d 378.) The rule is stated in 31 C. J. S., Estates, § 34, pp. 42, 43, as follows:

"The relation of a life tenant to a remainderman or reversioner is frequently termed that of a trustee or quasi trustee. The life tenant is a trustee in the sense that he cannot injure or dispose of the property to the injury of the rights of the remainderman but he differs from a pure trustee in that he may use the property for his exclusive benefit and take all the income and profits."

See, also, 33 Am. Jur., Life Estates, Remainders, Etc., § 217, p. 700.

Courts have consistently refused to give any exact definition to, or to fix definite boundaries of, that class of human relations which, by principles of common honesty, require fair dealing between the parties, and which is commonly known as fiduciary relations. The

word "fiduciary" as a noun means, but is not limited to, one who holds a thing in trust for another, a trustee; a person holding the character of a trustee, or a character analogous to that of a trustee, in respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires. Thus, a person is a fiduciary who is invested with rights and powers to be exercised for the benefit of another party. (*Herman v. Lynch*, 26 Kan. 435, 438; *Meyer v. Reimer*, 65 Kan. 822, 824, 70 P. 869; *Lindholm v. Nelson*, 125 Kan. 223, Syl. ¶ 3, 264 P. 50; *Staab v. Staab*, 160 Kan. 417, 422, 163 P. 2d 418.) See, also, 36A C. J. S., Fiduciary, pp. 381, 382, 383 and 15 C. J. S., Confidential, pp. 821, 822.

While Evaline had the power to sell the property whenever she saw fit to do so, that power was personal to her and, when exercised, she was required to keep the proceeds as a trust fund for the benefit of the remaindermen subject to her right to receive the income for life and to invade the corpus, if necessary, for her care and comfort. When she purported to exercise the power in 1936, the remaindermen stood in much the same position as *cestuis que trust* stand under a pure trust, and she owed them the highest duty to act honestly and in good faith by selling the land to a *bona fide* purchaser for the best price offered. Nothing less would suffice. Hence, the pivotal question relates to the validity of her sale and deed of the land to her husband and his reconveyance of the fee to her. As husband of the trustee fiduciary, was he an eligible purchaser? Were the sale and the deeds valid? If not, were they of the class denominated "void" and therefore such that the recording of the deeds did not impart constructive notice, nor convey to the remaindermen knowledge that their property was being held or claimed adversely by the life tenant?

The principle condemning transactions in which a trustee or other fiduciary acts in his own interest, and which might be adverse to the interest of the trust estate, or that of the beneficiaries, has been found applicable in the vast majority of cases in which the question has arisen, to transactions by, or on behalf of, the spouse or other relative of such fiduciary. (*Scott v. Gamble and Wife*, 9 N. J. Eq. 218; *Bopst v. Williams*, 287 Mo. 317, 229 S. W. 796; *In re Fulton's Will*, 2 N. Y. S. 2d 917; *Scott's Executrix v. Gorton's Executor*, 14 La. 111, 33 Am. D. 576; *Vinal v. Gove*, 275 Mass. 235, 175 N. E. 464; *Waddy v. Grimes*, 154 Va. 615, 153 S. E. 807; *Driver et al. v. Blakeley*, 165 Ore. 312, 107 P. 2d 524, 131 A. L. R. 985.)

This court passed upon this principle in *Frazier v. Jeakins,* 64 Kan. 615, 68 P. 24, 57 L. R. A. 575. There, the fiduciary sold trust property at a private sale to her husband. In striking down the sale and holding the deed void, this court held:

"Trustees for the sale of land will not be permitted directly or indirectly to make profit for themselves out of the trust estate.

"The guardian of the property of a minor cannot legally buy it at his own sale, nor can his wife or her husband. If they do, the non-existence of fraud and the payment of full consideration will not validate the purchase." (Syl. ¶¶ 1, 2.)

In applying the doctrine which prohibits a fiduciary from profiting personally as a result of transactions concerning the trust estate, the court said:

". . . In fact, the main rule that a trustee may not profit himself out of the trust estate is no better settled than the subsidiary one that lack of fraud in the trustee's dealings will not validate the transaction. The fiduciary relation of trustee and *cestui que trust* is one which does not call so much for rules to redress accomplished wrong as for rules to prevent its accomplishment. The one in question, therefore, is not intended to be merely remedial of wrong actually committed, but, rather, to be preventive, or deterrent, in effect. The opportunities which are open to an unfaithful trustee to advantage himself out of the trust estate are so many and so tempting, and the condition of the beneficiary in the trust ordinarily so helpless and confiding, that the law gives warning in advance against all transactions out of which it is possible for the former to make gain at the expense of the latter. Hence, as was tersely and wisely said by Chief Justice Beasley, in *Staats v. Bergen,* 17 N. J. Eq. 554: 'So jealous is the law upon this point, that a trustee may not put himself in a position in which to be honest must be a strain on him.'" (l. c. 619.)

In holding that the foregoing rule was applicable to a sale to the fiduciary's husband or wife, as the case may be, the court said:

"Admit the separate legal status of husband and wife to be as absolute and clearly differentiated as their physical lives, there is yet, as a matter of fact, an identity of interests and affections between them which utterly precludes the idea of a trustee's sale by one to the other being different in effect than a sale by the trustee to himself. To say that a husband acting in a fiduciary capacity in effecting a sale would be disposed, as against his wife, to diligence of effort in finding some one who would pay more for the trust estate than she would, is to fly in the face of nature itself and deny the experience of the ages. *Nor can we conceive of any reason why it might be different in the case of a wife, were she the trustee negotiating the sale.*" (Emphasis supplied.) (l. c. 623.)

In *In re Fulton's Will,* supra, an executrix conveyed real estate to her husband under a power of sale contained in the will. It was

held that such a transfer was constructively fraudulent and a beneficiary under the will could disaffirm the sale and have it set aside whether it was *bona fide* or not. The opinion quoted from Restatement of the Law, Vol. 1, Trusts, § 170, p. 434, as follows:

" 'If the third person is the spouse of the trustee, the sale can be set aside as though it were made to the trustee himself.' " (l. c. 919.)

While not directly in point, the following cases are analogous: *Webb v. Branner,* 59 Kan. 190, 52 P. 429; *Wiswell v. Simmons,* 77 Kan. 622, 95 P. 407; *Lindholm v. Nelson,* supra; *Crowley v. Nixon,* 132 Kan. 552, 296 P. 876; *Miller v. Henderson,* 140 Kan. 46, 33 P. 2d 1098, and *Murray v. Brown,* 177 Kan. 139, 276 P. 2d 344.

In *Frazier v. Jeakins,* supra, it was stated that there may be exceptional circumstances justifying sales by trustees to their husbands or wives, or even to the trustee himself. In that case the wife, as Evaline in the instant case, owned the other interest in the land and contended she could effect a better sale to her husband as a co-tenant to be, rather than a stranger. The court noted the claim was a reasonable one, but that for such cases the law has a practice which must be followed, and *Michoud et al. v. Girod et al.,* 4 How. (U. S.) 503, 557, 11 L. Ed. 1076, was cited to the effect that where the estate must be sold and the trustee is ready to give more for it than anyone else, he should apply to the court to let him be the purchaser, since that was the only way he could protect himself.

From the foregoing we conclude that Evaline, as trustee or *quasi* trustee, occupied a fiduciary relation to the remaindermen when she exercised the power of sale and was under a duty not to sell to herself either at private or public sale, and the purported sale to her husband was the same as if made to herself. The effect of the transactions in 1936 was an attempt to convert her life estate into a fee by a pretended sale to herself through a deed to her husband, and under our decisions we have no hesitancy in holding that the sale and deed were void, and that the husband's deed of reconveyance was a nullity.

Having reached the conclusion just announced, other points raised by the parties fall into their proper place. The void transaction was not hallowed by the recording of the deeds which evidenced it. The void deeds did not impart constructive notice nor give to the remaindermen knowledge that their property was being held or claimed adversely by the life tenant. Neither did they

commence the running of the statute of limitations against the remaindermen entitled to the property under the testator's will.

Evaline's possession and enjoyment of the property until her death on November 10, 1957, was as a life tenant under the will of her brother, Charles M. Post, deceased, and was not in any sense hostile or adverse to the remaindermen. When she passed away, they immediately became entitled to the possession of the real estate because their remainder interest ripened into an estate in fee simple with immediate right of possession. (*Tretbar v. Aged Ministers Home,* 180 Kan. 18, 299 P. 2d 58.)

The appellants contend that the district court had no jurisdiction of the subject of the action and that the cause of action is barred by the statute of nonclaims (G. S. 1949, 59-2239). It is argued that the petition attempts to set up what can only be a claim against Evaline's estate because it seeks to take the undivided 7/9ths interest in the property in question out of her estate. We do not agree. The property was never a part of Evaline's estate. Not having sold the property during her lifetime, the life estate devised to her under the testator's will terminated upon her death November 10, 1957. This action was one to recover for the estate of Charles M. Post, deceased, and for those entitled thereto as remaindermen and their successors in interest, the 7/9ths interest which was being claimed by the defendants in contravention of the testator's will. One of the plaintiffs is a special administrator who was directed by the probate court of Smith County to bring the property within the administration of the testator's estate, and the district court had jurisdiction of the subject matter. (*In re Estate of Weaver,* 175 Kan. 284, 262 P. 2d 818; *In re Estate of Slaven,* 177 Kan. 185, 277 P. 2d 580.)

We have examined the authorities cited by the appellants. It will not be necessary to analyze them. There is no ruling in any of them contrary to the results here reached.

The order of the district court overruling the defendants' demurrers to the plaintiff's petition is affirmed.