No. 47,852

ROBERT K. LEHNER, *Appellee*, v. The Estate of R. V. Lehner, Deceased, ANITA C. LEHNER and CHARLES W. STEINCAMP, Co-Executors, *Appellants*.

(547 P. 2d 365)

Opinion filed March 6, 1976.

*John L. Hampton*, of Hampton & Ward, of Great Bend, argued the cause, and *Tudor W. Hampton* of the same firm was with him on the brief for the appellant.

*Harry E. Robbins, Jr.*, of Gamelson, Hiebsch, Robbins & Tinker, of Wichita, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This appeal involves a construction of the last will and testament of R. V. Lehner, deceased. Appellants, Anita C. Lehner, deceased's surviving widow, and Charles W. Steincamp, are the co-executors of the estate. Appellee, Robert K. Lehner, is a brother of the deceased who was named a remainderman in the

will. The central issue relates to the power of a life tenant to invade or consume the corpus of the life estate.

R. V. Lehner died testate on January 2, 1971, leaving a gross estate valued at approximately five million dollars. The bulk of his estate consisted of real estate and oil and gas interests. Under the provisions of the will, decedent's widow was granted an undivided one-half interest in all properties owned by him at his death. Under Provision VI of the will, which gives rise to the controversy, decedent granted to his widow a life estate in the residue, with the remainder to Emma Lehner, Glen O. Lehner, and the appellee.

The decedent's will was duly admitted for probate on January 18, 1971, in the probate court of Ness County. Following final settlement appellee appealed to the district court claiming the probate court erred in its construction of Provision VI of the decedent's will. On January 2, 1975, the district court issued its findings of fact and conclusions of law. The court found that under Provision VI the decedent's widow, as life tenant, had the right to all rents, royalties, and other income from the residuary estate during her lifetime, along with the power to sell and dispose of the property, but that she could not spend or dissipate the proceeds of any sale of the property that constituted a portion of the vested remainder to be taken by the named remaindermen. The court further ordered the life tenant to make an annual accounting of all transactions that involved the remainder interests. The court refused to assign specific property into the two estates created by the will.

The first point of error raised by appellants relates to the powers and duties of the widow over the property in which she was given a life interest. The dispute as to the limits of these powers stems from the interpretation of Provision VI of the will:

"I do hereby give, devise and bequeath unto my said wife, ANITA LEHNER, all of the rest, residue and remainder of my properties, whether real or personal, and wheresoever situated, for and during her lifetime, with full power and authority to the use and enjoyment of said properties and the power to sell and dispose of same during her lifetime. In this connection, my wife shall be entitled to all rents, royalties or other incomes from any of my such properties during her lifetime and she shall have the further power to lease, release or assign such properties or pledge or encumber the same in such manner, as she, in her sole discretion may choose, notwithstanding the fact that any such lease or the terms of any pledge or encumbrance may extend beyond the terms of her life. The power to lease shall be general, and without restricting the general power, shall include the power to lease for oil, gas or other mineral exploration and production and for agricultural purposes.

The power to sell, herein granted, shall be general and shall include the power to execute appropriate deeds or other documents of conveyance and the purchaser thereof shall not be required nor shall such purchaser need to look to the application of the proceeds of such sale. Any such sale may be at public or private sale as my said wife, in her sole discretion may elect and choose. The remainder of such residue remaining upon my wife's death, as well as the proceeds remaining from the sale or pledge of any such properties, shall go and I hereby devise and bequeath the same, unto my mother, EMMA LEHNER, of Cheney, Kansas; my brother, GLEN O. LEHNER, of Newton, Kansas; and my brother, ROBERT K. LEHNER, of Cheney, Kansas, in equal shares, share and share alike. Should my said mother, Emma Lehner, predecease me, then I do hereby provide and direct that the share that she would have received had she survived me shall go, in equal shares, unto my said brother, Glen O. Lehner and my said brother Robert K. Lehner."

Appellants argue it is clear from this provision that it was the intent of the testator to give his widow a general power of appointment, without restriction, over the residuary estate; and that she should treat the property as her own during her lifetime, subject to the limitations that she may not give the property away, or devise it by will, or convey it to other than a bona fide purchaser for full and adequate consideration. Appellants claim no other limitations are placed on the power of a life tenant. Accordingly, it is the position of appellants that as life tenant the decedent's widow has the full power to use and dispose of the corpus of the residuary estate during her lifetime as she sees fit and in accordance with her personal needs and desires. It follows that under appellants' view the appellee remainderman possesses a vested remainder interest in the corpus of the residuary estate subject to divestment.

Appellee views the problem in terms of whether the widow may dissipate the remainder under her power of disposition and sale, and at the same time keep her fee estate intact. He contends that under the language of the will the widow is entitled to only the rents, royalties or other income from the remainder estate; and that upon sale of any properties which constitute part of the remainder she is entitled to only the income earned on the proceeds of the sale.

Proper resolution of the issue raised by the parties depends on the construction to be given to the controlling language found in the will. We are mindful of the oft-stated rule which requires the court in construing the provisions of a will to place itself in the shoes of the testator at the time he made the will and determine as best it can the purpose and intentions he endeavored to convey by the language used. (*Wallace v. Magie*, 214 Kan. 481, 522 P. 2d 989;

*Beall v. Hardie,* 177 Kan. 353, 279 P. 2d 276; *Baldwin v. Hambleton,* 196 Kan. 353, 411 P. 2d 626; *Parsons v. Smith, Trustee,* 190 Kan. 569, 376 P. 2d 899.) The tools in aid of our search for the testator's intention are the language contained within the four corners of the document, plus any extraneous circumstances surrounding its execution which assist in understanding his true intent and purpose. (*Parsons v. Smith, Trustee,* supra.) Since each case must stand on its own peculiar facts any guidance to be gained by a review of prior cases is necessarily of a limited nature. We should attempt to give effect to the intention of the testator as we perceive it.

In Provision I of his will, decedent directed that his co-executors pay all his just debts and obligations without the necessity of obtaining permission from the court. Provision II granted to his widow an undivided one-half interest in the remainder of his properties, sufficient to entitle his estate to the full "marital deduction." Provision III directed that all estate taxes be paid from the properties remaining after compliance with the first two provisions. In the next two provisions decedent made special cash bequests to named beneficiaries. Provision VI granted a life estate to the widow with a gift over to remaindermen. The remaining provisions covered powers of the co-executors, a no-contest clause and a simultaneous death provision.

Focusing our attention on Provision VI, we gain some insight into the nature of the interest held by the widow. In the first sentence of that provision the testator expressly granted to his wife the "full power and authority to the use and enjoyment" and the "power to sell and dispose" of the residue of the estate during her lifetime. Ordinarily, a tenant for life is entitled to the full use and enjoyment of the property in which he has a life estate, but in the absence of language explicitly or by implication indicating otherwise it is generally held that the life tenant does not have the power to encroach upon or dispose of the corpus of the life estate. (51 Am. Jur. 2d, Life Tenants and Remaindermen, § 27, p. 249; 31 A. L. R. 3d, Life Tenant—Power to Invade Corpus, p. 6.) The relation of a life tenant to a remainderman is frequently referred to as that of a trustee or *quasi* trustee in the sense that he cannot injure or dispose of the property to the injury of the remainderman, but he may nonetheless use the property for his exclusive benefit and take all the income and profits. (*Windscheffel v. Wright,* 187 Kan. 678, 360 P. 2d 178, 89 A. L. R. 2d 636; *Noel v. Noel,* 212 Kan. 583, 512 P. 2d 324.) In the instant case the testator explicitly declared his

intention that his widow should have the power to sell and dispose of the property in the life estate during her lifetime. Such an expression relating to the extent of dominion of the first taker has been construed by this court to grant to the life tenant an unlimited power of disposition, subject only to the restrictions that the life tenant may not transfer the property by gift or without adequate consideration, or devise the property by will. (See, "Expressions of Intent to Create Fees," Section M, by William R. Scott, 3 Washburn L. J. 5, and cases cited therein.)

In the case of *Mansfield v. Crane*, 116 Kan. 2, 225 Pac. 1087, this court was asked to construe a testamentary provision granting a life estate to the testator's widow "for her own use and disposal as she may deem right and proper." Based in large part upon this language we held that the life tenant had an absolute right of disposal of the life estate, subject to the restriction that she could not dispose of it by will. Whatever remained at her death passed to the named remaindermen.

Similarly, in *Pearson v. Orcutt*, 106 Kan. 610, 189 Pac. 160, we construed the provision, "with power to sell and dispose of the same in any way that she may desire," to grant to the widow a life estate coupled with a qualified power of disposition of the fee. What we said in that case is worthy of repetition:

> "The language employed—'with full [sic] power to sell and dispose of the same in any way that she may desire'—is very broad and if a literal construction is adopted goes far to indicate an absolute power of disposition . . . The apparent sweeping effect of the provision may perhaps be accounted for as the testator's expression of the thought that was obviously present in his mind, that in no event whatever was the intervention of a court to be necessary to her conveying the property. . . . His primary purpose was clearly to make provision for her maintenance, in the broadest sense of that term—for the use and disposition of the property for her interest and according to her judgment. She was at liberty to use it or its proceeds to meet the expenses of such manner of living as she might see fit to adopt, but this would not imply that she might give it away. . . ." (pp. 614, 615.)

In *Parsons v. Smith, Trustee, supra*, we were faced with similar testamentary language granting the widow the "full power and authority to sell, mortgage, lease, transfer or otherwise dispose of any of said property and to use all or any part thereof during her life time, . . ." We held that the language of the will evidenced an intention on the part of the testator to give his wife a qualified power of disposition of such property for her personal use and benefit during her lifetime; however, that qualified power

did not include the power to gratuitously dispose of the property for purposes foreign to her personal needs.

Finally, in *Condon Nat. Bank of Coffeyville, Kan. v. United States,* 349 F. Supp. 755 (1972), the federal district court was confronted with testamentary language similar to that under consideration in the present case. The testator had provided that his wife would have the "full power to sell or dispose" of the residuary property "as to her shall seem best." In applying the law of Kansas, the court stated:

". . . Under Kansas law, this power of disposition, expressly granted, is unlimited except that it has been held that one may not transfer the property by gift or in the absence of consideration, or by will where there is a gift over to others at the termination of the life estate. [Citations omitted.]

"We feel compelled to conclude that under Kansas law Helen F. Brown could, under the will of Douglas R. Brown, appoint to herself or to her creditors, and could have under such power consumed the entire estate of her husband but that she could not dispose of it otherwise, that is, by gift or will." (p. 759.)

In the instant case, a further indication of the testator's intention to grant his widow the power of disposition can be found in that clause of the will which devises and bequeaths the "remainder of such residue remaining upon my wife's death, as well as the proceeds remaining from the sale or pledge of any such properties," to the named remaindermen. By use of the phrase "residue remaining" the testator has indicated there is a possibility of diminution of the residuary estate. This would only be true if the life tenant had the power to invade the corpus and dispose of the funds; otherwise, the word "remaining" would be meaningless.

Reliance upon similar language as indicating the power of disposition can be found in the early case of *Greenwalt v. Keller,* 75 Kan. 578, 90 Pac. 233, wherein the testator directed that "all property that may be left by" the life tenant at her death, pass as provided. We concluded that by use of this clause the power of disposal was added to that which would otherwise constitute a life estate only. Perhaps no better expression of the significance we attach to such a phrase as used by the testator herein can be found than the statement of this court in *Sharpe v. Sharpe,* 164 Kan. 484, 190 P. 2d 344. In discussing the relevance of the testator's use of the phrase, "after her death *any remaining property of my estate* is to be divided," we said:

"The will in the present case may not have created an uncontrolled power of disposition of the real estate of the testator in such manner as to have vested in the plaintiff an estate in fee simple which she could have disposed

of by will. But we have no hesitancy in concluding that the will created a life estate with a power of disposition, as was held by the trial court. To hold otherwise would require us to overlook the significance which must be given to the use of the phrase 'remaining property of my estate' in the will. The use of such phrase probably limited the devise to such an extent that it could not properly be regarded as an absolute devise in fee. The use of the word 'remaining' by the testator clearly indicates, in our opinion, that the testator intended that the devisee of the real estate should have the power to dispose of such portion of the property as might be required during her lifetime. Otherwise no practical significance would attach to the use of the words 're-maining property.' . . ." (p. 490.)

Based on the foregoing factors, we agree with the contention of appellants that the testator intended to grant his widow a life estate with the power to invade the corpus during her lifetime. Appellee has offered no evidence of extraneous circumstances which would in any way contradict this construction of decedent's will. His principal argument is that the powers granted to the widow in the first sentence of Provision VI of the will are limited by the second sentence thereof. That sentence provides that "[i]n this connection," his wife is entitled to all rents, royalties or other incomes from the residuary properties, and that she shall have the power to lease, release, assign, pledge, or encumber such property, notwithstanding the fact the lease, or the terms of any pledge or encumbrance may extend beyond the terms of her life. As we view the intention of the testator as ascertained from the entire instrument, the second sentence was intended to operate as words of explanation rather than words of limitation. The testator was merely making it clear that his widow would have the power to lease, pledge, or encumber the property on terms to carry over beyond her own lifetime.

We find nothing in the language of the will or the relationship of the parties which would in any way indicate that the testator intended to limit the power to dispose of the corpus to the widow's support and maintenance. When considering the will as a whole and the language used therein we are left with but one conclusion, that the testator intended to grant to his widow an unqualified power of disposition of the corpus of the life estate as she sees fit and as her personal needs dictate, subject only to the restrictions imposed by law that prohibit her from devising the property by will, disposing of it by gift, or selling it other than to a bona fide purchaser for fair and adequate consideration. Appellee would thus possess a vested remainder interest in the corpus of the residu-

ary estate, subject to defeasement by the widow's exercise of her power of disposal. In accordance with the provisions of the will, the proceeds of the sale of any property in the residuary estate upon the death of the life tenant become the property of the remaindermen to the extent they are not consumed. It follows that the trial court erred in ruling that the widow did not have the power to invade and consume the corpus of the residuary estate.

Appellants also challenge the right of the district court to require an annual accounting by the life tenant of all transactions that involve the remainder interest. The court noted in its order that as a practical matter this would include nearly everything in the estate, except perhaps the exempt property. The record does not disclose on what basis the court ordered the annual accounting. Appellee argues it was within the equitable power of the district court to order an accounting by the life tenant and he cites K. S. A. 59-1506 in support. That section provides for the protection of a remainderman's interest in personalty against waste by the life tenant. It gives the court the power to order that the personal property be delivered to the holder of the limited estate or held by a trustee. It also gives the court the power to require a bond from the life tenant. The statute, however, has no application to interest in realty, which forms much of the estate in the instant case.

Appellee has failed to cite any cases where requirement of an accounting by the life tenant was approved by this court and it appears from our research that security is rarely required of a life tenant possessed of real estate. (51 Am. Jur. 2d, Life Tenants and Remaindermen, § 32, p. 257.) Although this court has upheld the requiring of security by the life tenant to account for funds to the remainderman (*Blakely v. Blakely*, 115 Kan. 644, 224 Pac. 65; *Diller v. Kilgore*, 135 Kan. 200, 9 P. 2d 643), we do not believe these decisions are controlling here. Unlike the cited cases, the life tenant in this case has been found to have the right to dispose of or consume the corpus. Ordinarily, a life tenant who has the power to dispose of or consume the corpus will not be required to give security for the protection of the remainderman, at least in the absence of a showing of danger of loss or waste. (*In re Estate of Burling*, 179 Kan. 687, 298 P. 2d 290.) With such broad power entrusted to the life tenant by the will it would be inconsistent with the intent of the testator and overly burdensome upon the life tenant to require an annual accounting. In the instant case there has been no claim of bad faith or waste by the life tenant. This,

coupled with the fact the life tenant had the power to invade the corpus of the residue and dispose thereof, compels us to conclude the district court erred in requiring an annual accounting of all transactions involving the remainder interest.

The third and final point raised by appellants is that the district court erred in failing to designate the specific property in which the widow was given a life interest. It is the position of the appellants that it was the intent of the testator that his widow receive one-half the estate outright and the remaining property, after the payments provided for, would then constitute the residuary estate. For this reason, appellants argue it was necessary for the court to designate the specific properties making up the two estates.

Appellants place emphasis upon the language found in K. S. A. 1975 Supp. 59-2249 of the probate code. That section provides in part:

". . . Upon such settlement and allowance the court shall determine the heirs, devisees, and legatees entitled to the estate and assign the same to them by its decree. The decree shall name the heirs, devisees, and legatees, describe the property, and state the proportion or part thereof to which each is entitled. . . ."

We have interpreted the statute to require that the final decree issued by the probate court set forth with particularity the extent and nature of the title which each legatee or devisee acquires. (*Sharpe v. Sharpe,* supra.) The district court in this case complied with the directives of 59-2249 by naming the heirs to the estate and designating their respective shares.

Aside from the requirements of 59-2249, we do not believe it was the intention of the testator that specific property be assigned to each of the two estates. In Provision II of the will his widow was devised and bequeathed "an undivided one-half interest" equal to a full "marital deduction." The use of the word "undivided" indicates the intention of the testator. Although the undivided nature of the property creates additional accounting problems we see no insurmountable obstacles which would prevent an accurate determination of the remaindermen's interest. For this reason we cannot say the district court committed error by refusing to specifically designate the items of property in each of the two estates.

Affirmed in part and reversed in part.