ESTATE OF REGINA REICHENBERGER, DECEASED, HELEN KETZNER, CO-ADMINISTRATOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ESTATE OF REGINA REICHENBERGER, DECEASED, ALPHONSE REICHENBERGER, CO-ADMINISTRATOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Reichenberger v. Commissioner
Docket Nos. 11754-77; 11755-77.[1]
United States Tax Court
T.C. Memo 1980-43; 1980 Tax Ct. Memo LEXIS 542; 39 T.C.M. (CCH) 1035; T.C.M. (RIA) 80043; February 20, 1980, Filed Patrick J. Regan and James J. McGannon, for the petitioners. Patrick E. McGinnis, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $41,131.16 estate tax deficiency in the Estate of Regina Reichenberger, deceased. The sole issue for decision is whether the decedent possessed a general power of appointment on the date of her death over certain real property thereby requiring *543 the fair market value of her interest in such property to be included in her gross estate. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Regina Reichenberger died intestate on December 13, 1973, a resident of Sedgwick County, Kansas. Helen Ketzner and Alphonse Reichenberger ("petitioners") were duly appointed co-executors of the Estate of Regina Reichenberger. At the time of filing their petition, petitioners were residents of the State of Kansas. Regina was married to Nicholas J. Reichenberger in 1908. In 1927 Nicholas' father deed to Nicholas and Regina as tenants in common 320 acres of farmland located in Sedgwick County. They lived on and farmed this land until their respective deaths. On March 6, 1959, Nicholas and Regina obtained a 20 year, $25,000 mortgage on their 320 acres of armland from the Mutual Benefit Life Insurance Company. On February 13, 1960, Nicholas executed a will which was prepared by his attorney, Leo R. Wetta. At the time he executed his will, Nicholas had very little cash. The only valuable property he held was his undivided one-half interest in the farm and a $22,000 note receivable from one of his *544 sons. Nicholas' will provided in part as follows: FIFTH: I give and bequeath all of my personal property to my beloved wife, Regina Reichenberger, to be hers absolutely if she survives me. SIXTH: I give, devise and bequeath to my beloved wife, Regina Reichenberger, a life estate in all of the real estate which I may own at the time of my death, she to have the full use, possession, rents and income therefrom during her lifetime. (a) I further empower my wife, Regina Reichenberger, in her sole discretion and during her lifetime, to sell and dispose of any portion or all of the real estate which I may own or to which I may be entitled at the time of my death at public or private sale. Any deed or deeds, conveyances or bills of sale which may be necessary or required may be executed by her in connection with this power of sale, it being my intention that she be empowered hereby to convey title to such property as fully as though made by me in my lifetime. SEVENTH: If my wife, Regina Reichenberger, survives me, upon her death, otherwise if she predeceases me, I direct my executor to sell and dispose of all of my property, whether it be real or personal, at public or private *545 sale, during the administration of my estate, hereby empowering my executor to convey title to all of such property as fully as though made by me in my lifetime. EIGHTH: After payment of all prior bequests herein, and the debts, costs of admiistration and taxes, I give and bequeath to my son, Paul Reichenberger, the sum of $1,000.00. (a) All of the rest, residue and remainder of my estate, I give and bequeath to my beloved children as hereinafter named, share and share alike: Alphonse Reichenberger
One-Eighth share
Helen Ketzner
One-eighth share
Rita Hermes
One-eighth share
Regina Bogner
One-eighth share
Marcella Wapplehorst
One-eighth share
Paul Reichenberger
One-eighth share
Jeannette Wohlenschneider
One-eighth share
Dennis N. Reichenberger
One-eighth share
subject, however, to the provision that should any of my children above named be then indebted to me or my estate by virtue of unpaid promissory notes, I direct that the amount of such note or notes be deducted from his or her distributive share to the extent of the balance due and unpaid on such note or notes. In the event that there be a balance remaining unpaid on such note or notes after *546 deduction therefrom of that child's full distributive share, I recommend to such child that the balance remaining unpaid be paid to the estate in cash to become a portion of my residuary estate and be distributed as hereinabove provided in Subparagraph (a).
(b) If any of my children named above should predecease me, the share that such child would have received hereunder shall instead pass to the heirs of the body him or her surviving. (c) Should any of my children named above predecease me not leaving heirs of the body him or her surviving, the share such child could have received shall instead pass to my heirs according to the laws of descent and distribution of the State of Kansas. Nicholas' overall testamentary intention was to give Regina a life estate in the farm and, upon her death, to sell the farm and divide the proceeds among his eight children. Nicholas died on December 19, 1961. He was survived by his wife, Regina, and by the eight children named in his will. Regina died on December 13, 1973. In the estate tax return filed on behalf of her estate, the executors reported the $138,960 fair market value of her undivided one-half interest in the farmland held *547 since 1927. The fair market value of the entire farm on the date of Regina's death was $277,920. Upon receiving a 30-day letter from respondent which indicated he intended to include the whole farm in Regina's gross estate, the executors of Regina's estate filed a petition in the Sedgwick County Probate Court seeking judicial construction of Nicholas' will as to the nature of the power granted to Regina in paragraph Sixth(a). The Probate Court specifically decreed: * * * that the power of sale provided to Regina Reichenberger in the sixth paragraph of the Last Will of Nicholas J. Reichenberger, deceased, was to be employed by her only in the event that the mortgage indebtedness covering the real estate owned by Nicholas J. Reichenberger at the time of his death could not be serviced from the income that the real estate produced, and is therefore construed to be a limited power of sale. In re Estate of Regina Reichenberger, Case No. 58311 (Probate Ct., Sedgwick Co., Kan. Nov. 18, 1976). The executors appealed this decision to the Sedgwick County, Kansas District Court. A hearing and tril de novo were held before the Kansas District Court on December 29, 1976. The Kansas *548 District Court subsequently determined the following: The Court finds from the evidence and from a construction of the will in its entirety that the intention of the testator in paragraph Sixth, paragraph numbered six and seven of that will, that the testator intended to devise and bequeath to Regina Reichenberger a life estate in the real property owned by the testator at the time of deach with a power of sale and that he did not intend to devise or bequeath the right to invade the corpus and to divest the remaindermen of their interest in the real property devised and bequeathed by paragraphs six, seven and eight. The Court specifically finds that the use of the words "and dispose" appearing in Article Six of the will are ambiguous and by themselves insufficient to indicate an intent on the part of the testator to give to the life tenant the power to divest the remaindermen of their remainder interest either in the real estate or in the proceeds therefrom. In re Estate of Regina Reichenberger, Case No. C-38687 (Dist. Ct., Sedgwick Co., Kan. Feb. 10, 1977). In his notices of deficiency dated August 25, 1977, respondent determined that on the date of her death, Regina *549 held a general power of appointment over Nicholas' undivided one-half interest in the farmland. Accordingly, respondent increased Regina's taxable estate by $138,960. ULTIMATE FINDINGS OF FACT By including paragraph Sixth(a) Nicholas intended to provide Regina with a limited power of sale to be used in the event that the mortgage indebtedness on the farmland could not be serviced from farm income. OPINION The issue for decision is whether the decedent, Regina Reichenberger, possessed a general power of appointment under her deceased husband's (Nicholas) will over certain real property thereby requiring the fair market value of her interest in such property to be included in her gross estate under section 2041. [2]
Section 2041(a)(2) provides, in substance, that a decedent's gross estate shall include the value of any property with respect to which the decedent possessed, at the time of his death, a geeral power of appointment. Section 2041(b) defines a general power of appointment as "* * * a power which is exercisable in favor of the decedent, his estate, *550 his creditors, or the creditors of his estate * * *." Section 20.2041-1(b)(1), Estate Tax Regs., explains: The term "power of appointment" includes all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of local property law connotations. For example, if a trust instrument provides that the beneficiary may appropriate or consume the principal of the trust, the power to consume or appropriate is a power of appointment. * * * Respondent contends that Nicholas' will unambiguously gave Regina a life estate in Nicholas' real property coupled with a general power of appointment within the meaning of section 2041. Accordingly, respondent contends that the fair market value of the property must be included in Regina's gross estate. Respondent's argument is premised on the language in paragraph Sixth(a) of Nicholas' will which gives Regina the power "in her sole discretion and during her lifetime, to sell and dispose of any portion or all of the real estate which I may own or to which I may be entitled at the time of my death at public or private sale." Petitioners, on the other hand, contend that *551 if the entire language of Nicholas' will is scrutinized, it is clear that under paragraph Sixth(a) Regina unambiguously possessed only a limited power of sale and did not receive any right or power under the will to consume, invade or appropriate the corpus of the life estate for her own benefit or for the benefit of her creditors. Alternatively, petitioners contend that the language contained in paragraph Sixth(a) is ambiguous and that evidence showing Nicholas' intent to give Regina only a limited power of sale should be admitted to aid in construction of the will. Although the tax consequences of any interest possessed by Regina on the date of her death are determined under federal law, we look to state law to determine the rights and interests possessed by Regina under Nicholas' will. Morgan v. Commissioner, 309 U.S. 78 (1940). The interpretation of Nicholas' will is governed by the law of Kansas. Specifically, we must decide whether the highest court of Kansas would hold that Regina possessed a general power of appointment within the meaning of section 2041 under Nicholas' will. Commissioner v. Estate of Bosch, 387 U.S. 456 (1967). Under *552 Kansas law, the cardinal rule in construing a will is to give effect to the intention of the testator as conveyed by the language used in the will. In re Estate of Lehner, 219 Kan. 100, 547 P. 2d 365 (1976). The testator's intention my be gleaned from the language contained within the four corners of the will, plus any extraneous circumstances surrounding its execution which assists in understanding the testator's true intent. Id.
When the meaning of the language in a will is challenged, the first responsibility of a court is to determine from an examination of the language whether an ambiguity exists. In re Estate of Graves, 203 Kan. 762, 457 P. 2d 71 (1969).Only if the language of the will is found to be uncertain may the court employ the rules of judicial construction.Id. The test in determining whether the language of a will is ambiguous is whether the testamentary intention can be gathered from the four corners of the instrument itself. Theimer v. Crawford,224 Kan. 586, 582 P. 2d 1151 (1978). If the language of the will is determined to be ambiguous, extrinsic evidence, including testimony of the scrivener of the *553 will, may be admitted to ascertain the testator's intent. In re Sowder's Estate, 185 Kan. 74, 340 P. 2d 907 (1959); Trustees of Baker U. v. Trustees of E. Ass'n.,222 Kan. 245, 564 P. 2d 472 (1977); see In re Tompkins' Estate, 195 Kan. 467, 407 P. 2d 545 (1965). See also Estate of Craft v. Commissioner, 68 T.C. 249 (1977), affd. 608 F. 2d 240 (5th Cir. 1979). However, testimony of the scrivener which tends to change or later the provisions of a will is inadmissible. In re Tompkins' Estate, supra.
An examination of the language of Nicholas' will leads us to the conclusion that the provisions of paragraph Sixth(a) are ambiguous. The first sentence of that paragraph refers to a "power to sell and dispose", whereas the next sentence speaks of "this power of sale." Furthermore, the will does not prescribe uses for the proceeds if a sale should occur, nor does the will define the extent of Regina's control over sale proceeds. Because Nicholas' intent with respect to paragraph Sixth(a) cannot be gleaned from the four corners of the will or from the circumstances existing at the time *554 the will was executed, extrinsic evidence attempting to show Nicholas' intent is admissible. Leo R. Wetta, Nicholas' attorney and the scrivener of Nicholas' will testified that it was Nicholas' intention to give Regina a limited power of sale so that Regina could sell part of the farm should she face foreclosure on the $25,000 mortgage on the farm. [3] Wetta's testimony is corroborated by the circumstances surrounding the execution of the will. On March 6, 1959, eleven months prior to the execution of the will in issue, Nicholas and Regina obtained a $25,000 mortgage on the farm. The only substantial property held by Nicholas at the time he executed his will was his undivided one-half interest in the farm and a $22,000 note receivable from one of his sons. Nicholas had very little cash with which to service the mortgage. In view of this evidence we conclude that Nicholas' will gave Regina a limited power of sale and not a general power of appointment.
*555 Even were we to find that Nicholas' will was not ambiguous, we would hold that the language of the will supports the conclusion that it was Nicholas' intent to give Regina a life estate in the farm with a limited power of sale. In paragraph Sixth, Nicholas uses the language granting Regina beneficial interest in the life estate property. "I give, devise and bequeath * * *." On the other hand, in paragraph Sixth(a) Nicholas uses the words "I further empower", words which do not signify an intent to create a beneficial interest. Furthermore, in paragraph Sixth Nicholas specifically limited Regina's interest in the life estate property to "the full use, possession, rents and income therefrom during her life time." Under Kansas law, a life tenant has no right or power to encroach upon or diminish the corpus of the life estate in absence of language indicating otherwise in the instrument creating the life estate. In re Estate of Lehner, 219 Kan. 100, 547 P. 2d 365 (1976). It is respondent's contention that in paragraph Sixth(a) Nicholas granted Regina the power to dispose of the life estate property in any manner and to appropriate any sale proceeds for her use and *556 consumption. The provision referred to by respondent reads: "I further empower my wife, Regina Reichenberger, in her sole discretion and during her lifetime, to sell and dispose of any portion or all of the real estate which I may own or to which I may be entitled at the time of my death at public or private sale." Regina was not specifically granted the right to invade or consume the life estate property or the right to use or appropriate any sales proceeds. Nor do we find that this provision of the will indirectly granted her the power to do so. First, the word "dispose" is restricted by the phrase "at public or private sale." That is, Regina had the power to sell and dispose of the farm at public or private sale, not dispose of the proceeds. Smith v. Judge, 133 Kan. 112, 298 P. 651 (1931). Similarly, the phrase "in her sole discretion" does not broaden Regina's life estate interest. It relates to nothing more than Regina's power to sell the life estate property without having to obtain the approval of the remaindermen. Second, the phrase "to sell and dispose" is used in such a way as to connote the synonymity of the words sell and dispose. The phrase *557 does not read "to sell or to dispose" which would have indicated Nicholas' intention that the powers be dichotomous. Third, similar language is used in paragaph Seventh, directing Nicholas' executor to sell and dispose of all Nicholas' property at public r private sale upon Regina's death. The words "and dispose" as used in paragraphs Sixth(a) and Seventh are nothing more than a redundancy of the words "to sell" and the whole phrase "to sell and dispose" relates to nothing more than the mechanics of conveying good title. We conclude that the words "to sell and dispose" as used in the context of Nicholas' will are insufficient to indicate an intent to give Regina the power to divest the remaindermen of their interest either in the life estate property or the proceeds therefrom. Respondent next argues that the use of the word "remainder" in aragraph Eighth of Nicholas' will indicates that Regina could convey the real estate to any person, so long as the conveyance was made with consideration and that any of the proceeds or real estate that remained at Regina's death would pass under the provisions in paragraph Eighth. It is true that paragraph Eighth(a) of Nicholas' will provides *558 that "all the rest, residue and remainder of my estate" shall be distributed to his eight children in equal shares. These words are nothing more, however, than standard will terminology and cannot be taken out of context to infer a power to diminish the corpus of the life estate property. Respondent relies on two cases, Condon Nat. Bank of Coffeyville, Kan. v. United States,349 F. Supp. 755 (D. Kan. 1972) and Lehnerv. Estate of Lehner, supra. Each case is distinguishable. In both Condon and Lehner, the Courts found, based on the language of the wills in issue, that the devisees were granted life estates with an unlimited power of disposition.In Condon the pertinent will provision was as follows: SECOND: All of the rest and residue of my property, real, personal or mixed, whatsoever and wheresoever situated, in which I may have any interest at the time of my death, I give, devise and bequeath unto my beloved wife, HELEN F. BROWN, with full power to sell or dispose of the same or any part thereof as to her shall seem best: PROVIDED That whatever of my said property, if any, shall remain undisposed of at the time of the death of my wife, *559 helen f. brown, i/ give, devise and bequeath the same, one-half to my heirs then surviving, and one-half to the heirs of my wife then surviving. 349 F. Supp. at 756. The pertinent will provision in Lehner was as follows: I do hereby give, devise and bequeath unto my said wife, ANITA LEHNER, all of the rest, residue and remainder of my properties, whether real or personal, and wheresoever situated, for and during her lifetime, with full power and authority to the use and enjoyment of said properties and the power to sell and dispose of same during her lifetime. * * * The power to sell, herein granted, shall be general and shall include the power to execute appropriate deeds or other documents of conveyance and the purchaser thereof shall not be required nor shall such purchaser need to look to the application of the proceeds of such sale. Any such sale may be at public or private sale as my said wife, in her sole discretion may elect and choose. The remainder of such residue remaining upon my wife's death, as well as the proceeds remaining from the sale or pledge of any such properties, shall go and I hereby devise and bequeath the same, unto my mother, EMMA *560 LEHNER, of Cheney, Kansas; my brother, GLEN O. LEHNER of Newton, Kansas; and my brother ROBERT K. LEHNER, of Chency, Kansas, in equal shares, share and share alike. * * * 547 P. 2d at 367-368. In Condon and Lehner the testators expressly accounted for a diminished life estate in their respective residuary clauses. Here, on the other hand, we have a standard residuary clause from which it is impossible to infer whether Regina did or did not have the power to invade or consume the life estate property.
We are satisfied that, on the basis of all the facts and circumstances, the Supreme Court of the State of Kansas, were it presented with the issue, would conclude that Regina, on the date of her death, possessed only a limited power of sale which did not give her the right to invade or consume the life estate property. [4] Accordingly, we hold that on the date of her death Regina did not possess a general power of appointment within the meaning of section 2041, over her deceased husband's undivided one-half interest in the farm. *561 Decisions will be entered for the petitioners. Footnotes
1. These cases were consolidated for purposes of trial, briefing and opinion.↩
2. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
3. At trial, respondent was granted a coantinuing objection to Leo R. Wetta's testimony on the ground that much of his testimony violated the rule against hearsay. On brief, respondent renewed his objection. Without passing on each statement made by Wetta, we admit his testimony only for the purpose of evidencing Nicholas' overall intent in executing his will. Since for such purpose such testimony was not presented to prove the truth of any matter asserted by Nicholas, the hearsay rule has no application.↩
4. While we are not governed by the decisions of the trial courts of the State of Kansas in deciding this case, Commissioner v. Estate of Bosch, 387 U.S. 456 (1967), we note that in In re Estate of Regina Reichenberger, Case No. 58311, the Probate Court of Sedgwick County, Kansas, determined that Regina received only a limited power of sale under Nicholas' will which was to be used by her only in the event that the mortgage indebtedness on the farm could not be serviced from the income that the farm produced. Similarly, the Kansas District Court in In re Estate of Regina Reichenberger↩, Case N. C-38687, found that Nicholas did not intend to devise Regina the right to invade the corpus of the life estate or to divest the remaindermen of their interest in the real property. The District Court further found that the words "and dispose of" constituted at best a redundancy by the scrivener of the will.