NOT DESIGNATED FOR PUBLICATION

No. 116,297

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Estate of
WILLIAM G. COURTER.

MEMORANDUM OPINION

Appeal from Greenwood District Court; DAVID A. RICKE, judge. Opinion filed August 18, 2017. Affirmed in part, reversed in part, and remanded with directions.

*Tim Connell*, of Connell & Connell, of El Dorado, for appellants Ray Courter and Jerry Courter.

*Karen K. McIlvain*, of McIlvain Law Office, LLC, of Madison, for appellee Eleanor Courter.

Before HILL, P.J., MCANANY and ATCHESON, JJ.

*Per Curiam*:  This case involves the interpretation of language in the last will and testament of William Courter regarding the interests of his wife, Eleanor, and of his two surviving sons, Jerry and Ray Courter, in real estate in William's estate.

FACTUAL AND PROCEDURAL HISTORY

William Courter married Dorothy Courter. Larry, Jerry, and Ray were born as issue of the marriage. During their marriage, William and Dorothy owned several parcels of real property as joint tenants with right of survivorship. Following Dorothy's death, William married Eleanor in 1974. It is unclear from the record how long William and Dorothy were married. But what is clear is the fact that William and Eleanor's marriage was not a short-term second marriage. It lasted for over 40 years.

1

Eleanor had children from a previous marriage. William and Eleanor had no children of their own. During the course of their marriage, William and Eleanor conveyed to Eleanor's children by gift a house they owned in Eureka, along with the real property William had formerly held in joint tenancy with his first wife, Dorothy.

In 1981, William executed his last will and testament. William's son Larry, a single person with no children, died before his father. William died in October 2015. At his death, William solely owned two parcels of real property, which he disposed of through his will, along with the remainder of his estate, as follows:

> "Second: I give and devise all my real property unto my beloved wife, ELEANOR COURTER, for and during her natural life, with the right and power of sale and disposition in her lifetime of any part or all of said property, which she may desire to sell or dispose of during her lifetime; and she shall have the power and authority to execute deeds of covenants with or without warranty, and any and all other instruments of transfer necessary to vest the title of property so sold or disposed of in the purchase or purchasers thereof, and the power and authority to execute lease agreements for the lease or rental of such property, including agricultural, property and oil and gas leases, even though they may extend beyond the life of the said ELEANOR COURTER; and upon the death of the said ELEANOR COURTER I give and devise all of such property remaining in fee simple unto my sons, LARRY D. COURTER, JERRY L. COURTER and RAY F. COURTER, share and share alike.

> "Third: I further provide that my wife, ELEANOR COURTER, shall have the sole and absolute right to lease any and all of the real estate for oil and/or gas purposes, and any and all oil and/or gas leases executed by the said ELEANOR COURTER shall be binding upon any and all persons in whom the remainder interests in said real property shall ultimately vest, and further provided that the said ELEANOR COURTER shall have and be entitled to any and all bonuses, delay rentals and royalties paid by virtue of leasing said real estate or any portion thereof for oil and/or gas purposes during the term of her natural life.

2

"Fourth: I give and bequeath all the rest and residue of my estate, personal or mixed, and wherever situate of which I may die seized or possessed or to which I may be entitled at the time of my demise unto my beloved wife, ELEANOR COURTER, to have and to hold the same absolutely for her own use and benefit forever."

In December 2015, following William's death in October, Eleanor petitioned for an informal administration of William's estate. Eleanor asserted that she was entitled to all assets of the estate under the will. Jerry and Ray responded, asserting that neither a simple nor an informal administration of the will was appropriate. They requested that the will be admitted to probate, that Eleanor be appointed executrix, and that the court set a hearing to determine the distribution of the assets in William's estate.

In January 2016, the district court admitted William's will to probate, appointed Eleanor the executor, and issued letters testamentary. The district court found that William died testate and that when William executed his will he was of sound mind and without restraint. The district court scheduled a hearing to determine proper construction of William's will.

In March 2016, Eleanor submitted an inventory and valuation of the estate's real property, which consisted of two parcels of land in Greenwood County with an aggregate value of $360,000. Jerry and Ray asserted that in his will William devised to Eleanor a life estate with the power to dispose of these two parcels of real property, with the remainder interest in the property vested in them. They contended that Eleanor, as the life tenant, would have to show necessity in order to sell the estate's real property and that their remainder interest would extend to the proceeds of any such sale. They asked that the district court determine that Eleanor cannot dispose of the real property by will or gift and that any remaining proceeds from a sale of the real property or the remaining parcels of real property existing at the time of Eleanor's death pass to them. In the meantime, they asked that Eleanor be required to obtain approval from the court before any sale of

3

these parcels and that the proceeds of any sale of the property be placed in a segregated account.

Eleanor contended that the will gave her unlimited power to dispose of the real estate for any reason, not just for her personal support and maintenance, so long as she did not transfer the property by gift, will, or without adequate consideration. According to Eleanor, Jerry and Ray were entitled only to any of the estate's real property remaining at her death and not the proceeds from any prior sale of the property.

In April 2016, the district court ruled that the will unambiguously provided the following:

(1)     Eleanor is a life tenant with the right and power to sell any or all of the estate's real property as she may desire during her lifetime;

(2)     Because Eleanor does not contest the restrictions placed on a life tenant as set forth in *In re Estate of Lehner*, 219 Kan. 100, 547 P.2d 365 (1976), Eleanor's right and power to sell the real estate is subject only to the restrictions that she may not transfer the property by gift, by will, or by sale for inadequate consideration;

(3)     Any remaining real property at Eleanor's death will pass to the surviving sons in fee simple;

(4)     Eleanor is not required to segregate or preserve any proceeds derived from the sale of the estate's real property or to allocate any of the remaining proceeds to the surviving sons at her death; in other words, the surviving sons' remainder interests do not attach to the proceeds of any future sale of the estate's real property during Eleanor's lifetime.

Jerry and Ray moved the district court to reconsider its ruling and order construing the will. The district court denied the motion, and this appeal followed.

ANALYSIS

*Review Standards*

The interpretation and legal effect of a written instrument, such as a will, are matters of law over which we exercise unlimited review. Likewise, whether a will is clear or ambiguous is a matter of law and subject to unlimited review. See *Boucek v. Boucek*, 297 Kan. 865, 874, 305 P.3d 597 (2013).

When interpreting a will, the primary rule of construction is to ascertain the testator's intent. If the terms of a will are unambiguous, the testator's intent is to be ascertained from the will's language without applying rules of construction or permitting parole evidence. See *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014); *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013); *In re Estate of Haneberg*, 270 Kan. 365, 371, 14 P.3d 1088 (2000). A written instrument will not be found to be ambiguous unless two or more meanings can reasonably be construed from the contract. The court will not strain to find an ambiguity where, in common sense, there is none. *Iron Mound v. Nueterra Healthcare Management*, 298 Kan. 412, 418, 420, 313 P.3d 808 (2013).

While these general contract principles apply when interpreting a will, "[a] comprehensive review of all of the Kansas cases involving disputes between a life tenant and the remaindermen leads to only one clear conclusion. Each case appears to turn upon its own particular facts and no general rules can be formulated which will apply in all factual circumstances." *In re Estate of Kreie*, 235 Kan. 143, 151, 679 P.2d 712 (1984).

5

*The Vesting of the Remainder Interests of Jerry and Ray*

Jerry and Ray argue that the district court erred in finding that their remainder interests in the estate's real property vest at Eleanor's death, not at the time of their father's death.

It is a "well-settled rule that the law favors the early vesting of estates." *Watts v. McKay*, 160 Kan. 377, 385, 162 P.2d 82 (1945). In *Tretbar v. Aged Ministers Home*, 180 Kan. 18, 21, 299 P.2d 58 (1956), the court explained that a life tenant's power to undermine a remainder interest does not convert a vested remainder interest into a contingent one:

> "The fact the interest of a remainderman may be of indefinite value or may ultimately have no material value, does not prevent the creation of a vested remainder, or the fact that the testator who devises or bequeaths property to one for life, the remainder to another, gives to the life tenant a power to dispose of the property so that there is a possibility undetermined until the determination of the life estate that the property will not, in fact, be available to the remainderman, does not make the remainder contingent but leaves it vested subject to defeasance by the exercise of the power."

Eleanor argues that the will's provision regarding oil and gas leases provides that any such leases she executes "shall be binding upon any and all persons in whom the remainder interests in said real property *shall ultimately* vest." (Emphasis added.) She asserts that this language in the will expresses William's intent that his sons not immediately receive vested remainder interests upon his death.

But when William gave Eleanor an interest in the estate's real property for her lifetime with the power of sale and disposition, with the remainder to his sons, he did not subject the sons' remainder interests to the happening of a condition precedent. Rather, they were entitled to possession and enjoyment of their interests in the estate's real

6

property at Eleanor's death. Although Eleanor had the power to sell or dispose of the estate's real property during her lifetime and could thereby divest Jerry and Ray of their remainder interests, their remainder interests were nonetheless vested at William's death. They did not need to wait for Eleanor's passing for their interests to vest.

*The Continuation of Vested Interests in the Proceeds of any Sale of the Property*

Jerry and Ray contend that the district court erred in finding that their remainder interests did not continue in the proceeds of a future sale by Eleanor of the estate's real property. They rely on *Gaskill v. United States*, 238 Kan. 238, 241, 708 P.2d 552 (1985), for the proposition that because there is no clear provision in the will that states otherwise, the proceeds of any sale take the place of the property sold. Thus, they argue, they have an interest in any proceeds of a future sale of the estate's real property.

In *Gaskill*, the Kansas Supreme Court articulated the general rule that proceeds of a sale of disposition by a life tenant take the place of the property sold:

> "Where there are no clear provisions governing disposition of the proceeds of a sale by a life tenant in the will, the proceeds of a sale or disposition by a life tenant take the place of the property sold, so that title thereto is in the remainderman, subject to such rights of possession, user, investment, reinvestment, expenditure, or consumption as may have been given the life tenant under the will." 238 Kan. at 241.

Here, the second paragraph of the will states that Eleanor may sell or dispose "in her lifetime of any part or all of [the estate's real] property, which she may desire to sell or dispose of during her lifetime." The will omits any mention of how Eleanor may use the proceeds or whether she must retain them. Based on *Gaskill*, it appears that because there is an absence of any language governing the disposition of the proceeds, any proceeds of such a sale would take the place of the sons' vested remainder interests in the real property itself. William intended to limit Eleanor's interest in the estate's real

7

property to a life tenancy. The will specifically granted her an interest in such property "for and during her natural life." It is also evident that William intended for his sons to receive the value of any remaining property at Eleanor's death. So the remainder interests of Jerry and Ray in the real estate will continue in the proceeds of any future sale by Eleanor of the property.

But the real question is whether Eleanor may defeat the remainder interests of Jerry and Ray in the proceeds of a future sale of the estate's real property by consuming the proceeds.

In *Pearson v. Orcutt*, 106 Kan. 610, 611-12, 189 P. 160 (1920), the testator granted a life estate in the property "'with [the] power to sell and dispose of the same in any way that she may desire without the intervention of any court during her natural life.'" The Kansas Supreme Court stated:

> "The language employed—'with full power to sell and dispose of the same in any way that she may desire'—is very broad and if a literal construction is adopted goes far to indicate an absolute power of disposition. . . . The apparent sweeping effect of the provision may perhaps be accounted for as the testator's expression of the thought that was obviously present in his mind, that in no event whatever was the intervention of a court to be necessary to her conveying the property. . . . His primary purpose was clearly to make provision for her maintenance, in the broadest sense of that term—for the use and disposition of the property for her interest and according to her judgment. She was at liberty to use it or its proceeds to meet the expenses of such manner of living as she might see fit to adopt, but this would not imply that she might give it away. [Citations omitted.]" 106 Kan. at 614-15.

In *In re Estate of Lehner*, 219 Kan. 100, 101-02, 547 P.2d 365 (1976), the will granted the decedent's widow a life estate with the power to dispose of "'all of the rest, residue and remainder'" of the testator's property, and "'[t]he remainder of such residue

8

remaining'" at the death of the life tenant then went to the remaindermen. The court held that, "[b]y use of the phrase 'residue remaining' the testator has indicated there is a possibility of diminution of the residuary estate. This would only be true if the life tenant had the power to invade the corpus and dispose of the funds; otherwise, the word 'remaining' would be meaningless." 219 Kan. at 105.

Here, unlike in *Gaskill* but in line with *Lehner* and *Pearson*, William's will expressly allows Eleanor to consume the estate's real property. The will specifies that William's sons are entitled to any *remaining* property at Eleanor's death, expressing the clear intent to allow Eleanor to diminish the value of the estate's property before her death. We find no language in the will that restricts Eleanor's power to dispose of the proceeds. Thus, she has an unrestricted right to consume the proceeds of any future sale of the estate's real property and may do so as she sees fit. Jerry and Ray have a remainder interest in any estate real property or any remaining proceeds but only to the extent they have not already been consumed by the time of Eleanor's death.

*Segregation of Proceeds of any Future Sale*

Jerry and Ray assert that the district court erred in declining to order Eleanor to segregate the proceeds of any future sale of the estate's real property. While they acknowledge that our Supreme Court has previously held a life tenant has no duty to account for proceeds of a sale of estate property, they contend that not requiring the segregation of proceeds will lead to future litigation over what happened to those proceeds prior to Eleanor's death.

Of course, there is quite a bit of speculation in all of this. Eleanor has not sought to dispose of any of the estate's real property to date, there is no indication that she intends to do so in the future, and there presently are not, and may never be, any proceeds for which to account.

9

In *Lehner*, the holder of a vested remainder interest in the decedent's residual estate was subject to defeasement by the decedent's widow who held a life estate with the power to dispose of the property. The court determined that the widow was not required to account for any transactions regarding the property in which she held a life estate and the right to dispose of the corpus. Further, a life tenant who has the power to dispose of or consume the corpus ordinarily will not be required to give security for the protection of a remainderman, at least in the absence of a showing of danger of loss or waste. 219 Kan. at 107-08. Because Jerry and Ray are speculating about what might happen to their remainder interests in the future if Eleanor decides to sell any of the real estate, they have no basis for alleging waste by Eleanor in order to invoke the apparent exception in *Lehner*.

*Restrictions on Eleanor's Power to Dispose of Estate Property*

Finally, Jerry and Ray argue that the district court erred in finding no restrictions on Eleanor's power to dispose of the real property other than the limitation she accepted from our Supreme Court's decision in *Lehner* that she could not transfer the estate's real property by gift, by will, or by a sale for inadequate consideration. They assert that Eleanor is a quasi-trustee and fiduciary as to them and, as such, is subject to restrictions on her power to dispose of the estate's real property beyond those set forth in *Lehner*.

In *Windscheffel v. Wright*, 187 Kan. 678, Syl. ¶ 3, 360 P.2d 178 (1961), the Kansas Supreme Court explained the nature of a life tenant's duty to remaindermen:

> "A life tenant with power to sell real property devised to her for life with remainder to designated persons, is a trustee or *quasi* trustee and occupies a fiduciary relation to the remaindermen, and in the exercise of that power, she owes to them the highest duty to act honestly and in good faith by selling the property to a *bona fide* purchaser for the best price offered."

Here, although not explicitly characterizing Eleanor as a quasi-trustee having fiduciary duties, the district court's recognition of the limitations imposed on Eleanor by our Supreme Court's decision in *Lehner* satisfies the life tenant's fiduciary duty to the remaindermen as set forth in *Windscheffel*; that is, to act "honestly and in good faith by selling the property to a *bona fide* purchaser for the best price offered." 187 Kan. 678, Syl. ¶ 3.

97 C.J.S., Wills §1761 provides:

"A will creating and conferring a power, in general terms, to sell or dispose of property . . . as he or she may desire, or the like, gives the donee complete and unrestricted authority to sell or dispose of the property in any proper manner, without limitation as to the amount, time, or purpose, provided he or she acts in good faith, and does not waste or squander the property, or dispose of it for the mere purpose of destroying the rights of [the] remaindermen."

Jerry and Ray rely on *West v. West*, 106 Kan. 157, 186 P. 1004 (1920), for the proposition that Eleanor must show that she is in need before she may sell any of the estate's real property, despite the will giving her an unrestricted power of sale and disposition. But in *West*, the testator's widow received her husband's personal property and the income from his real estate during her lifetime. Their son received "'all the real estate of which [the father dies] possessed together with all my personal property, subject to the prior claims of my wife during her lifetime.'" 106 Kan. at 158. The Kansas Supreme Court read this provision as expressing the testator's intent was "to provide for her support, that the qualification intended was that she might draw upon the principal— diminish the body of the personal estate—so far as might be necessary to that end." 106 Kan. at 159.

Unlike in *West*, there is nothing in William's will to indicate that Eleanor's right to sell the real estate was predicated on her need to provide support for herself. On Eleanor's

11

death Jerry and Ray will not take their father's real estate "subject to the prior claims of my wife during her lifetime" as was the case in *West*. Under William's will, Eleanor does not make claims during her lifetime against property set aside for Jerry and Ray. Rather, she takes the real estate for herself for her life, and whatever residue remains at her death passes in fee simple to Jerry and Ray.

There apparently is no anticipated sale of the real estate. There is no evidence of William's intent to predicate any such sale on Eleanor showing a need for the proceeds. To the contrary, the will expressly gives Eleanor "the right and power of sale and disposition in her lifetime of any part or all of said property, which *she may desire to sell or dispose of* during her lifetime." (Emphasis added.) There is no evidence that Eleanor intends to waste the property or to act in bad faith to defeat the remainder interests of Jerry and Ray. Thus, Jerry and Ray fail to show that the court erred in not imposing restrictions on some speculative future disposal of the real estate beyond those restrictions spelled out in *Lehner*.

CONCLUSION

To summarize our holdings in this case, we conclude that the remainder interests of Jerry and Ray vested upon their father's death. The vesting of these remainder interests do not need to await Eleanor's death, though Jerry and Ray ultimately may not enjoy their vested remainder interests. This is because Eleanor has the right and power to dispose of the real estate during her lifetime, provided she does not do so by gift, will, or a sale for inadequate consideration.

Should Eleanor decide at some future time to dispose of any of the real estate, any such disposition need not be predicated on Eleanor showing that she needs the proceeds for her support. She can dispose of the property for any reason, provided she does not do

12

so in bad faith for the purpose of defeating the remainder interests of Jerry and Ray or in a manner that wastes or squanders the property.

If Eleanor disposes of any of the real estate during her lifetime, the resulting proceeds take the place of the real property in which Jerry and Ray have vested remainder interests, and they will take whatever remains of these proceeds upon Eleanor's death. But in the meantime, Eleanor is not required to segregate those proceeds from her other assets unless Jerry and Ray can demonstrate to the court that Eleanor is wasting the property or acting in bad faith to defeat their remainder interests.

Affirmed in part, reversed in part, and remanded for the entry of an order consistent with this opinion.